Kemp **WHISENHUNT, Sr., and Whisenhunt Investment Corporation**

v.

**PARK LANE CORPORATION et al.**

No. CA 3–75–1213–C.

United States District Court,
N. D. Texas,
Dallas Division.

Sept. 2, 1976.

C. Thomas Wesner, Jr., Wynne & Jaffe, Dallas, Tex., for plaintiffs.

Richard B. Tanner, Creel, Atwood & Spinuzzi, Dallas, Tex., for defendants.

## MEMORANDUM OPINION

WILLIAM M. TAYLOR, Jr., Chief Judge.

Plaintiffs filed this diversity action on October 1, 1975, seeking to recover losses arising from an ill fated real estate development venture with defendants. After conducting discovery in the case, plaintiffs moved for a preliminary injunction and appointment of a receiver. A hearing was held on the motion at which time testimony was taken from James Riggs, Sr., James Riggs, Jr., and Kemp Whisenhunt, Sr. Based on the evidence presented, it is the judgment of the Court that the motion must be denied.

### Statement of Facts

Although the story was complex and the testimony confused, the Court found the facts to be as set forth below. Plaintiff Kemp Whisenhunt, a domiciliary of Arkansas, was a seasoned real estate investor who managed and controlled Whisenhunt Investment Corporation, an Arkansas corporation. In May of 1974, Whisenhunt learned of the existence of James Riggs, Sr., an experienced builder and developer. Whisenhunt knew that Riggs was bankrupt but approached Riggs to investigate the possibility of a joint venture in which Whisenhunt's financial resources and Riggs' expertise could be combined to their joint benefit. After several meetings, Whisenhunt and Riggs agreed on a deal whereby Whisenhunt would back the purchase of a tract of land so that Riggs could engineer the construction of a 200-unit apartment complex. Development was to be carried out through a new corporation which would be owned 50% by Whisenhunt and 50% by Riggs' two adult children. Because Riggs had not set up the planned new corporation or secured construction financing at the time of the purchase of the land (June 5, 1974), title was taken in the name of Whisenhunt Investment Corporation which was thereby liable on the $985,000 purchase money note to First National Bank. The

bank loan covered the entire purchase price of the land and was made upon a bank appraisal which assigned a value of $1.2 million to the land. As further security, the bank required that Kemp Whisenhunt personally execute a guaranty, which he did. Plaintiff knew that James Riggs, Sr., owned no assets, but since he wanted his joint venturers to share his personal liability, Whisenhunt had the bank fill out two additional guaranties to be signed by the Riggs children who owned substantial assets. The bank did not require these additional guaranties, but was undoubtedly pleased to have them and filled in the guaranty forms which were signed by the Riggs children later in the day.

While it had been expected that Riggs would be able to commence construction on the apartments within 30 days of conveyance of the land, Riggs apparently encountered difficulty in obtaining funding for the planned work. After several months, Whisenhunt, who was beginning to face financial problems with other investments due to a depressed real estate market, decided to end his participation in the deal. The land, therefore, was conveyed to Park Lane Corporation in March of 1975 in consideration of assumption of the outstanding note to the bank.

Park Lane Corporation was initially formed by Riggs to carry out a real estate venture with a third party, but that venture had not materialized. The testimony of Whisenhunt indicates that his only knowledge of Park Lane prior to March 1975 was gleaned from financial statements dated December 1973 which were presented to him in June of 1974. These financial statements, taken together, indicated that the shares of Park Lane had a total value of $200,000. Although Whisenhunt maintains that he was told in June of 1974 that the financial statements were substantially accurate as of that date, there is no allegation that a similar representation was made in March of 1975. Neither does plaintiff assert that he at any time requested a financial statement of Park Lane Corporation. Rather, the evidence is that plaintiff relied

upon the $1.2 million bank appraisal of the land, together with a belief that Riggs would be able to carry out the planned apartment construction, in making the sale of the land to Park Lane. The financial statements in question were admitted into evidence at the hearing and appear to the Court to be quite abbreviated and suspect.

Because Riggs was unable to get his planned apartment complex underway or to make payments on the note, the bank foreclosed on the land which yielded only $785,-000 at sale. Thereupon, the bank made demand upon Whisenhunt who personally paid the bank $200,000 and received an assignment of the note and guaranties. For present purposes, we will assume that Whisenhunt made good and timely demand upon Park Lane and the Riggs' and that they failed to perform.

*Conclusions of Law*

■ It is a basic principle that the movant seeking invocation by a court of the extraordinary remedies of injunction or receivership bears a heavy burden. In this diversity action, the Court looks to Texas law to determine whether the requested relief is appropriate based on the facts of this case. Texas courts, in accordance with general practice, consistently hold that the grant of an injunction interfering with the use of property or the appointment of a receiver is a harsh and extreme remedy which should not issue except upon a clear showing that the movant is entitled thereto under applicable statutes or established principles of equity.

■ Because the plaintiff-movant is not a secured creditor, his motion for appointment of a receiver appears to be barred at the outset. *Parr v. First State Bank of San Diego,* Tex.Civ.App., 507 S.W.2d 579. An exception to the general rule denying unsecured creditors the benefit of a receiver is based upon *Texas Consolidated Oils v. Hartwell,* Tex.Civ.App., 240 S.W.2d 324, and similar cases which have permitted the appointment of a receiver to protect unsecured creditors where the "trust fund doctrine" is applicable.

■ The "trust fund doctrine" is a creature of equity which operates to treat officers, directors, or majority shareholders of a corporation as holding in trust for the benefit of creditors such corporate assets as have been improperly appropriated. Although plaintiff cites numerous factors which have convinced courts to apply the "trust fund doctrine," the Court must look at the underlying purpose of the doctrine to determine whether it is applicable here rather than relying upon any mechanical formula. The purpose seems simple: to prevent fraud upon creditors through removal of corporate assets that creditors had reasonably believed to be in the corporation. Under the facts as found by the Court, no fraud was practiced in the March 1975 conveyance of the land to Park Lane Corporation. Evidence is unclear that any material misrepresentation was made and the evidence is strong that plaintiff did not rely upon any representations as to the assets of Park Lane. Rather, the evidence indicates that he knew in substance with whom he was dealing in that transaction and voluntarily went forward, rather than seeking other purchasers, in reliance upon the bank appraisal of the land and a belief that Riggs would be able to complete the apartment project and pay off the note. There is little in this transaction, therefore, that would move a court of equity to exercise its discretion and order the extraordinary relief requested.

Further, the probability of plaintiff's ultimate success on the merits is not as clear as would be desirable to support the exercise of a court's equitable pre-judgment powers. To the extent that he seeks to recover on the loan guaranties executed by James Riggs, Jr., and by Kathy Riggs Rylander, there are serious questions as to whether these guaranties were supported by consideration as the plaintiff himself testified that they were not required by the bank and were executed after the loan was approved. Plaintiff's cause of action based on Park Lane's assumption of the $985,000 note requires application of the "alter ego" doctrine if plaintiff is to reach the personal

assets of the individual defendants. There is a real question of who or what was the "alter ego" of whom, and plaintiff's substantial knowledge of the facts might serve as the basis for a decision that he could be estopped to deny the corporate fiction. Finally, plaintiff's right to recover in tort based on alleged misrepresentations by defendant James Riggs, Sr., as to the assets of the Riggs children would seem to require a finding that the financial statements contained material and intentional misrepresentations, that plaintiff relied upon them, and that he was justified in so doing.

Under the facts of this case, this Court is unable to find sufficient basis for injunction or appointment of a receiver—remedies to which plaintiff may be entitled upon entry of a judgment in his favor by a court of law.