**MOTOROLA COMMUNICATIONS AND ELECTRONICS, INC., Plaintiff,**

v.

**The SHAREHOLDERS OF LOWERY COMMUNICATIONS, INC., Wayne A. Lowery, Byron A. Jones, George K. Nazarian, Jr., Sholmo A. Sela, Aubrey B. Calvin, J. Peyton Barnes, Jr., M.D., Georganna Allan Barnes, Maria Clare Grillo and June Milton Gray—Independent Executrix of the Estate of Robert Toms Gray, III, and Unknown Shareholders of Lowery Communications, Inc.**

Civ. A. No. H–89–4544.

United States District Court, S.D. Texas, Galveston Division.

Aug. 2, 1991.

---

Gary Scott Lewis, Watt, White & Craig, Houston, Tex., for plaintiff.

G. Ernest Caldwell, Galveston, Tex., Millard A. Johnson, Brigid D. Ashcraft, Houston, Tex., for defendants.

## MEMORANDUM OPINION

KENT, District Judge.

This action was brought by Motorola Communications and Electronics, Inc. ("Motorola") against the former minority shareholders and a director of Lowery Communications, Inc. ("LCI") to recover an alleged debt owed by LCI to Motorola prior to LCI's dissolution on December 30, 1986.[1]

The case was called to trial on July 25, 1991. Prior to the offering of testimony, the Defendants moved for dismissal on the basis that Motorola's claims were barred by limitations. The Court originally denied Defendants' motion. Motorola proceeded with its first and only witness on the substantive issues before the Court, Mr. Kenneth A. Whitney, Motorola's associate general attorney.[2]

During Mr. Whitney's testimony, Defendants' counsel again urged the motion to dismiss on the grounds that Motorola's claims against the Defendants are barred by limitations or, in the alternative, on the basis of laches and stale demand.

Defendants' motion on both grounds is GRANTED.

---

1. Defendants' basic factual defense, among others, is that they essentially received the value of their investment as minority shareholders in LCI upon its dissolution, and that they relied upon Mr. Lowery's representation that he and his new company—WDS Communications, Inc.—would assume liability for the unpaid obligations of LCI in return for receiving a vastly larger percentage of the assets of LCI upon its dissolution. Defendants contend that under this arrangement "adequate provision" was made for payment of the Motorola debt as required by Articles 6.04 and 7.12 of the Tex.Bus.

Corp.Act. Hence, dissolution was proper. The Court does not reach these factual and legal issues in this Memorandum, although it does note that at least one federal district court, applying Texas law and equity, has limited the application of Motorola's equitable theory of recovery to majority shareholders. *Whisenhunt v. Park Lane Corp.*, 418 F.Supp. 1096 (N.D.Tex. 1976).

2. Motorola's outside counsel also planned to testify on the issue of attorney's fees.

## FACTUAL BACKGROUND

LCI had a business relationship with Motorola for the purpose of purchasing certain communications equipment. In the Spring, 1985, the finance department of Motorola brought to Mr. Whitney's attention the delinquent LCI account with Motorola. LCI was continuously in arrears on its account with Motorola during 1985. Still, between October, 1985 and March, 1986, Motorola sold additional communications equipment to Answer, Inc., a wholly owned subsidiary of LCI, totalling more than $200,000.00.

Mr. Whitney sent demand letters to LCI and Answer, Inc. in February and March, 1986. In June, 1986, LCI and Answer, Inc. were so far in arrears that Motorola demanded additional security in the absence of which suit would be instituted. Mr. Whitney contacted Wayne Lowery, majority shareholder and President of LCI, and asked the identity of all shareholders who owned more than twenty percent (20%) of the stock of LCI. In addition, he insisted that LCI assume and guarantee the obligations of Answer, Inc. He also insisted that Wayne Lowery, as a shareholder with more than a twenty percent (20%) interest in the company, personally guarantee the LCI and Answer, Inc. obligations to Motorola. Even though Mr. Whitney could have demanded that Mr. Lowery disclose the identity and provide the personal guaranties of all of the minority shareholders of LCI, he did not do so.

The negotiations between Motorola, LCI and Wayne Lowery culminated in an "agreement" executed on June 4, 1986. In that agreement, LCI assumed responsibility for the account balance of Answer, Inc., and Wayne A. Lowery, as the majority shareholder, and sole shareholder with more than a twenty percent (20%) interest in LCI, personally guaranteed the obligation.

Following the June 4, 1986 Agreement, LCI was constantly delinquent. Mr. Whitney sent out a demand letter to LCI for payment in October, 1986. In the letter, he threatened to file suit immediately if Motorola's account was not brought current.

In mid-December, 1986, Mr. Whitney received a telephone call from Wayne Lowery. Mr. Lowery wanted a letter from Motorola stating that LCI was current in its payments. Mr. Whitney advised Mr. Lowery that LCI was not current and he asked Mr. Lowery why he wanted such a letter. Mr. Lowery would not tell him. Mr. Whitney refused to provide such a letter since he did not trust Mr. Lowery.

Mr. Whitney had been aware that there was a sale pending for certain of the assets of LCI. Further, he had heard rumors "internally" at Motorola that there was a deal pending between Radio Relay Corporation and LCI. Mr. Whitney's testimony was conflicting at various times on this point. Upon questions from his own counsel, Mr. Whitney disavowed any knowledge of a deal between Lowery and any third party. Still, he testified that he had heard rumors at Motorola that there was a deal pending between Radio Relay Corporation[3] and LCI. He also testified that he knew that there was going to be a sale of certain assets of LCI to Radio Relay Corporation.

Mr. Whitney next received a call from LCI's attorney. The attorney essentially requested the same letter that Lowery requested, i.e. a statement that Motorola had no judgment against Lowery Communications, and it would obtain no judgment against LCI prior to December 21, 1986.

Mr. Whitney testified that he knew something was up. It was not a usual or customary practice for customers to request such letters. He knew "something was going on, and that games were being played." He did not receive the details of the transaction, and did not trust Mr. Lowery. Still, he knew that there was a deal going down. Further, he knew that "people internally knew about the deal between Radio Relay and LCI and they knew something was up."

Still disavowing any knowledge of the details of the transaction, and having the leverage of LCI being in arrears on its

---

**3.** Radio Relay Corporation was a long time and large customer of Motorola.

payments, Mr. Whitney sent a letter dated December 16, 1986 to counsel for LCI (Defendants' Exhibit "5"). In that letter, Mr. Whitney made the precise representations requested by Lowery and his attorney. The only condition on the representation was that Motorola receive LCI's payment which was due more than one month earlier on November 15, 1986. LCI's attorney sent the check to Motorola, and Motorola permitted the transfer of the assets at the closing.[4]

On December 30, 1986, "Articles of Dissolution of Lowery Communications, Inc., a Texas Corporation," were filed with the Secretary of State for the State of Texas. The Articles of Dissolution list the names of the officers, directors and shareholders of LCI. Further, a Certificate of Mailing of Notice of Intent to Dissolve Lowery Communications, Inc., a Texas corporation, was filed as an attachment to the Articles of Dissolution and signed by Defendant Byron W. Jones, as Secretary of the Corporation. The certificate is dated December 19, 1986, and contains as Exhibit "A" the actual notice sent to all creditors.[5]

Motorola knew as early as the first quarter of 1987 that LCI had dissolved. Motorola's attorneys advised Mr. Whitney of the dissolution, and Motorola filed a lawsuit against LCI and Wayne A. Lowery, individually, on March 31, 1987 ("the 1987 lawsuit"). While Mr. Whitney testified that he could not determine who the shareholders were until just prior to Motorola's filing of the instant action in the closing days of 1989, the Court finds that the Articles of Dissolution contained all of the names of the shareholders, the Articles were available, and that Motorola had knowledge of them in early 1987.

In February, 1988, almost one year after it filed the 1987 lawsuit, Motorola took Mr. Lowery's deposition. Mr. Whitney claims that it was at the deposition of Mr. Lowery that Motorola also first learned that there was a distribution to the other minority shareholders of LCI.

Motorola learned in the 1987 lawsuit against LCI and Wayne A. Lowery, that another corporation—WDS Communications, Inc.—had been formed by Mr. Lowery, and that the new corporation had assumed the liabilities of LCI. Motorola joined WDS as a Defendant.

On August 9, 1989, Motorola obtained a default judgment in the 1987 lawsuit against Lowery Communications and Wayne A. Lowery, jointly and severally, for the amounts claimed by Motorola to be due and owing. Shortly thereafter, Motorola obtained a summary judgment against WDS Communications, Inc. for LCI's debt to Motorola, and based upon WDS's acknowledged assumption of LCI's liability to Motorola. Unfortunately, WDS filed bankruptcy shortly before the summary judgment was taken against it, and Mr. Lowery filed individual bankruptcy shortly after the default judgment was taken against him.

On December 29, 1989, Motorola brought this action against the former minority shareholders or, as the case may be, against the executors of the estates of the former minority shareholders, claiming that they are now responsible for the LCI's debts. Motorola argues that the shareholders are liable pursuant to the "equitable trust fund theory" espoused by the Texas Supreme Court in *Hunter v. Fort Worth Capital Corp.*, 620 S.W.2d 547 (Tex.1981).

---

4. Mr. Whitney's testimony was not consistent. Despite having information "internally" and "distrust" for Mr. Lowery, he still provided the letter. The only condition was payment of the November LCI installment under the June 4th Agreement. Yet, as of the date of the letter, Whitney could have also demanded the December 15th payment since it was then due. In fact, "knowing something was up" and that Lowery needed the letter, he could have demanded full payment, additional guaranties, or he could have simply not sent the letter.

5. Mr. Whitney testified that Motorola did not receive notice of the dissolution. He also testified though that Motorola often has difficulty with receiving mail citing a situation where notices had once been sent to a post office that had been closed for thirteen years. Regardless of whether Motorola received statutory notice, it had actual notice in early 1987 from its own attorneys and had reason to investigate the "deal" in December, 1986.

## APPLICABLE LAW

All parties agree that the Texas Business Corporation Act applies and Texas law governs this dispute.

The provisions of the Texas Business Corporation Act ("the Act") and the Texas Civil Practice and Remedies Code are dispositive. Article 2.41 of the Act states, in pertinent part:

*Liability Of Directors and Shareholders in Certain Cases*

A. In addition to any other liabilities imposed by law upon directors of a corporation;

(1) Directors of a Corporation who vote for or assent to a distribution by the Corporation that is *not permitted by Article 2.38* of this Act shall be jointly and severally liable to the Corporation for the amount by which the distributed amount exceeds the amount permitted by Article 2.38 of this Act to be distributed; provided that a director shall have no liability for the excess amount, or any part of that excess, if on any date after the date of the vote or assent authorizing the distribution, a distribution of that excess or that part would have been permitted by Article 2.38.

.    .    .    .    .

(3) An action may not be brought against a director for liability imposed by this section *after two years* after the date on which the act alleged to give rise to the liability occurred.

C. A director shall not not be liable under Subsection (1) of Section A of this Article if, in voting for or assenting to the distribution, he:

(3) *In determining* whether the Corporation made *adequate provision* for payment, satisfaction or discharge of all its liabilities and obligations as provided *in Article 6.04* of this Act, *relied in good faith and with ordinary care* upon financial statements of or other information concerning, any person who was or became contractually obligated to pay, satisfy, or discharge some or all of those liabilities or obligations.

.    .    .    .    .

E. *A director against whom a claim shall be asserted* under this Article for distribution made by the Corporation, and who shall be held liable thereon, *shall be entitled to contribution from the shareholders who accepted or received such distribution* knowing that such distribution was not permitted by Article 2.38, in proportion to the amounts received by them, respectively....

(Emphasis added).

Article 2.38 of the Texas Business Corporation Act states, in pertinent part:

*Distributions*

C. Notwithstanding the limitations set forth in Section B of this Article, the Corporation may make distributions in compliance with Article 6.04, 7.09, or 7.10 of this Act.

Article 6.04 of the Act states, in pertinent part:

*Procedure Before Filing Articles of Dissolution.*

(3) The Corporation shall proceed to collect its assets, convey and dispose of such of its properties as are not to be distributed in kind to its shareholders, pay, satisfy, or discharge its liabilities and obligations, or make adequate provision for payment and discharge thereof, and do all other acts required to liquidate its business and affairs; in case its property and assets are not sufficient to satisfy or discharge all the corporation's liabilities and obligations, the corporation shall apply them so far as they will go to the just and equitable payment of the liabilities and obligations. *After paying or discharging all of its obligations, or making adequate provisions for payment and discharge thereof, the corporation shall then distribute* the remainder of its assets, either in cash or in kind among its shareholders accord-

ing to their respective rights and interests....

(Emphasis added).

Article 7.12 states, in pertinent part:

*Limited Survival After Dissolution.*

A. A corporation dissolved (1) by the issuance of a certificate of dissolution or other action by the Secretary of State, ..., shall continue its corporate existence for a period of three years from the date of dissolution, for the following purposes:

(1) Prosecuting or defending in its corporate name any action or proceeding by or against the Corporation;

(2) Permitting the survival of any remedy not otherwise barred by limitations available to or against the Corporation, its officers, directors, shareholders or creditors for any right or claim existing, or any liability incurred, before the dissolution;

. . . . .

C. If after the expiration of the three-year period there still remains unresolved any action or proceeding not otherwise barred by limitations begun by or against the Corporation before its dissolution or within three (3) years after the date of its dissolution, the corporation shall continue to survive only for the purpose of that action or proceeding, until any judgment, order or decree in the action or proceeding is fully executed. If at the expiration of the three year period no action or proceeding on any remedy available to or against the corporation, its officers, directors, shareholders, or creditors, for any right or claim existing, or any liability incurred, before the dissolution shall have been brought, then that remedy shall abate.

(Emphasis added).

Section 16.003, Tex.Civ.Prac. & Rem. Code specifies that "[a] person must bring suit for ..., conversion of personal property, taking or detaining the personal property of another, ... not later than two years after the day the cause of action accrues."

## DISCUSSION

### A. *Motorola's Claims Are Barred By Limitations.*

■ The Articles of Dissolution of LCI were filed with the Secretary of State on December 30, 1986. Motorola commenced this lawsuit against the minority shareholders of LCI, and Byron W. Jones, as a director, on December 29, 1989, one day shy of the three year period specified under Article 7.12 of the Act.

The claims against Byron W. Jones as a director are barred by Article 2.41(3). The dissolution of LCI was accomplished pursuant to Article 6.04 of the Act. The Articles of Dissolution state "[a]ll debts, obligations, and liabilities of the Corporation have been paid, discharged, or adequate provision has been made therefor." Article 6.04 is incorporated into Article 2.38 of the Act which pertains to distributions. Hence, any action commenced against a director for failure to comply with Article 6.04, must, of necessity, also comply with Article 2.41 which contains a two year limitations period. Because Motorola did not bring its lawsuit against Byron W. Jones within two years of the "the date on which the act alleged to give rise to the liability occurred", it is barred by limitations.

■ The next issue is whether Motorola's claims against the minority shareholders are also barred by limitations. There is no case authority which specifically addresses this issue. However, under Article 2.41(E) of the Act, the liability of the shareholders is *derivative* from the director's liability. Nowhere in the Act does it specify that a creditor of a corporation may proceed directly against a shareholder where there has been, as here, a voluntary dissolution of a solvent corporation. In any event, under no circumstances would the limitations period be longer against a minority shareholder than it would be against a director.

■ In addition, Motorola's claim under the "equitable trust fund theory", espoused by the Texas Supreme Court in *Hunter*, sounds in tort. In effect, Motorola com-

plains that the distribution to the minority shareholders upon LCI's dissolution was a conversion of money owed to it as a creditor of the corporation. Section 16.003 of the Texas Civil Practice & Remedies Code specifies a two year limitations period for such claims.

Upon consideration of the testimony provided by Mr. Kenneth Whitney, Motorola's claims against the minority shareholders are barred by limitations. Motorola had actual knowledge of LCI's dissolution certainly no later than the first half of 1987. The names of the other shareholders, besides Mr. Lowery, were a matter of public record. Since Motorola was aware "internally" of a "deal" between LCI and Radio Relay Corporation in the fall, 1986, it knew or should have known that it should proceed immediately against the minority shareholders of LCI if it wanted to recover what it was owed from them. Instead, Motorola proceeded against the majority shareholder on a personal guaranty which it insisted upon, and against a corporation, WDS Communications, Inc., which it knew assumed LCI's obligation. It obtained judgments against both.

■ Motorola's position is that it brought this lawsuit within three years of the date of dissolution as authorized by Article 7.12 of the Act. However, Article 7.12 simply authorizes a three year period during which a *corporation* may prosecute and defend claims. It does *not* extend the limitation period. In fact, Subsection (C) of Article 7.12 expressly disavows the notion that the limitations period is extended. That subsection contains the disclaimer " . . . not otherwise barred by limitations . . .".

B. *Motorola's Claims Are Also Barred By Laches And Stale Demand.*

■ Motorola's claim in this action under the "trust fund theory" is an action grounded in equity. *Hunter, supra.* Motorola waited until the last day before the corporate existence of LCI expired before it filed suit against the former minority shareholders and one of the directors of the corporation even though, as Mr. Whitney

admitted, Motorola had actual notice of a "deal", and its attorneys had access to the public record in early 1987. As the Texas Supreme Court stated in the very case upon which Motorola has relied—*Hunter v. Fort Worth Capital Corp.*—Article 7.12 "expresses a legislative policy to . . . protect shareholders, officers and directors of a dissolved corporation from prolonged and uncertain liability." *Hunter,* 620 S.W.2d at 551. Motorola was unjustified in its delay in bringing this action. This delay runs afoul of the legislature's intent expressed both in Article 7.12 and expounded upon in the cases on which Motorola relies.

A cause of action for laches has three inter-related elements:

1. Delay in asserting a right or claim;
2. That the delay was inexcusable; and
3. That undue prejudice resulted from the delay.

*Armco, Inc. v. Armco Burglar Alarm Co.,* 693 F.2d 1155 (5th Cir.1982). Motorola's delay in asserting its claims against these Defendants was inexcusable. Motorola knew the facts alleged to support its claim against the shareholders and directors as early as January, 1987, and certainly no later than mid–1987. It works serious hardship upon these Defendants, particularly in light of the fact that two of them are executors of their deceased husband's estates, for Motorola to bring this claim at this point.

Motorola's claim in this action sound in equity. However, Motorola had the opportunity in June, 1986, at a time when it was armed with facts that would put it on notice to demand more of Wayne A. Lowery, individually and his corporation, LCI. Motorola did not demand more. Instead, it obtained the guaranties it believed necessary to secure its debt. Later, in December, 1986, despite Mr. Whitney's testimony that he did not "trust" Mr. Lowery, and "knew something was up", he provided a letter which enabled the transfer of the assets of LCI to one of Motorola's long time, large customers. Motorola then pursued Mr. Lowery and the corporation which assumed the liabilities of LCI—WDS Communications, Inc.—to judgments. Only

then, three years later, did Motorola turn to the minority shareholders. It would be inequitable to hold these shareholders liable at this time. Motorola's claims are also barred by laches and stale demand.