**POTASH CORPORATION OF SASKATCHEWAN, INC. and Potash Corporation of Saskatchewan Sales Limited, Relators,**

v.

**Hon. Fernando MANCIAS, Judge of The 93Rd District Court of Hidalgo County, Texas, Respondent.**

No. 13–96–600–CV.

Court of Appeals of Texas, Corpus Christi.

Feb. 13, 1997.

Charles C. Murray, Lisa D. Powell, Atlas & Hall, McAllen, Michael Evan Jaffe, Gerald Zingone, Washington, DC, for Relators.

Ramon Garcia, Edinburg, Raymond L. Thomas, Thomas & Ramirez, McAllen, Joseph M. Alioto, San Francisco, CA, Joseph R. Saveri, Leiff, Cabraser, Heimann & Bernstein, San Francisco, CA, Donald P. Alexander, Greenfield & Rifkin, Ardmore, PA, for Real Parties in Interest.

Before DORSEY, CHAVEZ and RODRIGUEZ, JJ.

## OPINION

RODRIGUEZ, Justice.

Potash Corp. of Saskatchewan, Inc., and Potash Corp. of Saskatchewan Sales Ltd., relators, bring this mandamus action to attack two orders issued by Judge Fernando Mancias, respondent. Specifically, relators challenge an "Order Denying Defendants' Renewed Motion to Strike Intervention" and an "Order Denying Defendants' Motion for Protective Order." We will conditionally grant relief on the order denying relators' motion to strike.

## BACKGROUND

The real party in interest, Keith Edward Barton, worked for several years as general counsel for a government-owned Canadian corporation that produced potash, which is used to make fertilizer. He left this position in 1988 and now lives in Hidalgo County. Relators are the successors in interest to the government-owned potash corporation where Barton was formerly employed, but Barton never worked directly for relators.

Some time after Barton left his job as general counsel, he approached several U.S. law firms and offered to serve as an expert in antitrust suits against various potash producers, including relators. Consequently, Barton became involved in two groups of cases. The first group of cases was before a Minnesota federal district court and involved the federal antitrust claims brought by fertilizer companies, who are the direct consumers of potash. The second group of cases is in California state court and involves the price-fixing claims of farmers, who are the end consumers of potash based fertilizers.

Both the Minnesota and California courts have considered Barton's proposed role as an expert witness and have entered orders to prevent his testimony. The Minnesota federal court analyzed the privilege issue under Canadian law, determined that Barton had violated his ethical obligations to relators, and ultimately disqualified all the plaintiffs' attorneys who had been working with Barton. When the suit underlying this mandamus was filed in Texas, however, the California court had not yet ruled on a pending motion for protective order regarding Barton's testimony.

Seeking injunctive relief against Barton, relators filed the underlying suit in Judge Mancias's court. Relators alleged a breach of fiduciary duty as well as a breach of contract and sought (1) an injunction to prevent Barton from disclosing any information about their affairs, (2) an order requiring Barton to produce documents related to his communications with plaintiffs' attorneys, (3) a declaratory judgment defining Barton's obligations to relators, and (4) an order requiring that Barton pay relators' costs in bringing the action. Judge Mancias set a hearing on relators' application for injunctive relief and issued a temporary restraining order postponing Barton's deposition, which was noticed in the California suit but designated to take place in Hidalgo County. Before the hearing in Judge Mancias's court, however, the California court ruled that the deposition could not go forward until it had ruled on the pending motion for protective order. The next day, the plaintiffs in the California suit filed a petition in intervention in relators' Texas suit against Barton. As the judicial interest underlying their intervention, the California plaintiffs asserted that they could not proceed in their California action without Barton's testimony. After the hearing on relators' application for injunctive relief, Judge Mancias ruled (1) that Barton could not disclose any privileged information, (2) that relators could not enjoin Barton from disclosing unprivileged information, and (3) that the deposition should go forward in the presence of a special master. However, Judge Mancias's initial order also provided that he would withdraw his order if the California court resolved the issue.

After Judge Mancias's ruling, Barton filed his original answer and counterclaim for defamation, malicious prosecution, abuse of process, and civil conspiracy. Later that week, the California court granted the motion for protective order and quashed notice of Barton's deposition. Once the California court entered its protective order, relators filed a motion in Judge Mancias's court to strike the California plaintiffs' intervention and nonsuited their claims against Barton in the underlying suit. In light of the nonsuit, the parties were realigned to designate Barton as the plaintiff and relators as defendants. When Barton served notice in the Texas action of his intention to take his own deposition testimony, relators moved for a protective order and renewed their motion to strike the California plaintiffs' intervention. Judge Mancias's orders denying these two motions are the subject of this mandamus proceeding.

## INTERVENTION

▉ The Texas Rules of Civil Procedure provide, "Any party may intervene by filing a pleading, subject to being stricken out by the

court for sufficient cause on the motion of any party." TEX.R. CIV. P. 60. Accordingly, the party opposing intervention bears the initial burden of challenging the intervention by a motion to strike. *Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.,* 793 S.W.2d 652, 657 (Tex.1990). Once the motion to strike has been filed, however, the burden shifts to the intervenor which must show its justiciable interest in the lawsuit. *Mendez v. Brewer,* 626 S.W.2d 498, 499 (Tex.1982). In order to establish the right to intervene, the intervenor must show that he "could have brought the same action, or any part thereof, in his own name, or if the action had been brought against him, he would be able to defeat recovery, or some part thereof." *Guaranty Fed.,* 793 S.W.2d at 657. The intervenor should receive an opportunity to respond to the motion to strike in order to demonstrate its interest in the lawsuit, but the question of whether an intervening party has a justiciable interest may be resolved by reference to the petition in intervention. *National Union Fire Ins. Co. v. Pennzoil Co.,* 866 S.W.2d 248, 250 (Tex.App.—Corpus Christi 1993, no writ) (citing *Metromedia Long Distance, Inc. v. Hughes,* 810 S.W.2d 494, 497 (Tex.App.—San Antonio 1991, writ denied)).

Significantly, the California plaintiffs filed their "Petition in Intervention" when Judge Mancias was still considering a pending application to enjoin Barton's deposition. The petition in intervention asserts the following justiciable interest:

> Intervenors have a justiciable interest in the matters in controversy in this litigation in that they are currently prosecuting an antitrust action in the Superior Court of the State of California, in and for the City and County of San Francisco, entitled *Neve Brothers, et al. v. Potash Corporation of Saskatchewan, Inc., Potash Corporation of Saskatchewan Sales, Ltd., and PCS Sales (Iowa), Inc.,* Number 959767 (the "San Francisco action").

> In the San Francisco action, Neve Brothers contend that PCS and PCS Sales violated §§ 16720 and 17200 of the California Business and Professions Code, (the "Cartwright Act" and the "Unfair Compe-

tition Act," respectively) by combining and conspiring to artificially fix, maintain, or peg the price of potash for sale in California and the United States. Neve Brothers sought to take the deposition of Keith Edward Barton, former Vice President and General Counsel for PCS [sic]. Intervenors respectfully submit that Mr. Barton has knowledge of matters which are relevant to the subject matter of the San Francisco action, and intervenors cannot proceed properly with the prosecution of said cause of action without the testimony of this witness.

> A Commission to take Mr. Barton's deposition in Texas was issued by the San Francisco Superior Court on November 2, 1995, with said deposition scheduled for November 15, 1995.

(Footnotes omitted). Accordingly, the alleged justiciable interest at issue is the California plaintiffs' need for Barton's testimony in order to prosecute their causes of action in California. After the petition in intervention was filed, however, the California court issued a protective order and relators nonsuited all their claims for affirmative relief in Judge Mancias's court. Consequently, Judge Mancias is no longer considering relators' application to enjoin Barton's deposition. Now, the only claims remaining before Judge Mancias are Barton's causes of action against relators for defamation, malicious prosecution, abuse of process, and civil conspiracy.

■ Relators argue that the nonsuit of their claims for injunctive relief against Barton foreclosed the justiciable interest asserted in the California plaintiffs' petition in intervention. Conversely, the California plaintiffs contend that their interest in Barton's testimony provides them with a justiciable interest in Barton's civil conspiracy claim against relators. Accordingly, we will consider whether the California plaintiffs could have brought any part of Barton's civil conspiracy claim in their own name.

■ Barton's civil conspiracy claim is set out in his first amended original answer and counterclaim as follows:

Counter-Defendants,[1] and others, engaged in a conspiracy to fix prices in the Potash industry and silence Barton, who has personal knowledge of facts that could result in civil and criminal sanctions against Counter–Defendants and other conspirators. Counter–Defendants and others carried out one or more illegal acts in the furtherance of the conspiracy to silence Barton including (a) malicious prosecution, (b) abuse of process, (c) making false and incomplete representations to various judicial tribunals, and (d) defaming Barton. These unlawful acts, and others, have proximately caused damage to Barton.

As an element of his civil conspiracy claim, Barton must show that his damages were proximately caused by a conspiracy to commit unlawful acts in order to accomplish a particular object. *See Juhl v. Airington*, 936 S.W.2d 640, 644–45 (1996); *Villacana v. Campbell*, 929 S.W.2d 69, 73 (Tex.App.—Corpus Christi 1996, writ requested). Barton does not claim to be a purchaser of potash, and the damages he alleges under his civil conspiracy theory are not purported to be the direct result of any conspiracy to fix the price of potash. Accordingly, the object of the conspiracy at the heart of Barton's claim is not an alleged conspiracy to fix the price of potash. Instead, his civil conspiracy claim involves only damages he has personally suffered as a result of an alleged conspiracy to silence him through defamation, lies, and groundless legal actions. Because Barton's civil conspiracy claim is based only on damages he has suffered personally, the California plaintiffs could not have brought any part of this claim in their own name. Moreover, the California plaintiffs' petition in intervention does not even request any damages under Barton's civil conspiracy claim; the California plaintiffs requested only recovery of their costs and an order requiring Barton to appear for a deposition originally noticed in the California case and subsequently quashed. *See* Tex.R. Civ. P. 47 (parties must demand judgment for all relief they deem themselves entitled to); Tex.R. Civ. P. 61 (rules of pleading apply equally to intervenors). Accordingly, the California plaintiffs

have no justiciable interest in Barton's civil conspiracy claim. Even if the California plaintiffs could establish some attenuated interest in Barton's claim, that interest would be different from the justiciable interest alleged in their petition in intervention. We hold that the trial court clearly abused his discretion by issuing his "Order Denying Defendants' Renewed Motion to Strike Intervention."

## ADEQUACY OF APPELLATE REMEDY

██ Once a petitioner for mandamus relief has demonstrated a clear abuse of discretion, he or she must further "establish the lack of an adequate appellate remedy" as an additional requirement for issuance of the writ. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992). We must evaluate relators' potential appellate remedy in light of the fact that this case involves a dispute between an attorney and the successor to the attorney's former client.

██ The Texas Rules of Civil Evidence recognize a potential privilege between attorneys and the successors to their clients, but the record before us does not include sufficient evidence to determine whether Barton's deposition testimony would necessarily encompass privileged information. *See* Tex.R. Civ. Evid. 503(c). Nevertheless, it is clear from the record that some of the matters Barton wishes to testify about are confidential. *See* Tex. Disciplinary R. Prof. Conduct 1.05(a) (1991), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. (Vernon 1988) (State Bar Rules art. X, § 9) (confidential information includes unprivileged information "relating to or furnished by the client ... acquired by the lawyer during the course of or by reason of the representation of the client"). Moreover, the rules of evidence and the disciplinary rules both recognize the need to balance clients' rights to confidentiality against their attorneys' rights to vindicate themselves in controversies between the lawyer and the client. Tex.R. Civ. Evid. 503(d)(3); Tex. Disciplinary R. Prof. Conduct 1.05(c)(5).

Disciplinary Rule 1.05 concerns the need to maintain the confidentiality of client informa-

---

1. This refers to relators, which were subsequent- ly realigned as defendants.

tion, whether it is privileged or unprivileged, and offers insight into Texas' policy for balancing the client's and lawyer's respective rights. Under this provision, "a lawyer shall not knowingly" reveal or use confidential information except under limited circumstances. TEX. DISCIPLINARY R. PROF. CONDUCT 1.05(b). When a dispute rises between lawyers and their clients, the lawyer may reveal confidential information only "[t]o the extent reasonably necessary to enforce a claim or establish a defense on behalf of the lawyer in a controversy between the lawyer and the client." TEX. DISCIPLINARY R. PROF. CONDUCT 1.05(c)(5). To facilitate the limited revelation of confidential information, the Texas Rules of Civil Procedure provide mechanisms that are ordinarily effective for allowing resolution of an attorney's claims without broad disclosure of the client's confidences. *See, e.g.,* TEX.R. CIV. P. 76a (regarding sealing court records from public disclosure). These procedures would not protect relator's confidences in this case, however, because the erroneous intervention has improperly conferred status as a party to the suit upon members of the public with no justiciable interest in the lawsuit. TEX.R. CIV. P. 61 (intervenors are subject to rules governing parties). There is no regular procedural mechanism to exclude the California plaintiffs from Barton's deposition because they have wrongfully been made a party to the underlying suit by virtue of their intervention.

The supreme court has held that mandamus will lie "when the trial court erroneously orders the disclosure of privileged information which will materially affect the rights of the aggrieved party ... without adequate protections to maintain the confidentiality of the information." *Walker,* 827 S.W.2d at 843. Relators have not shown whether the confidential information to be revealed at Barton's deposition will be privileged or unprivileged, but they have demonstrated the other criteria for relief. Disclosure of the information will materially affect relators' rights; the California plaintiffs' petition in intervention shows that they hope to use Barton's testimony against relators in the California action. Furthermore, the trial court cannot adequately protect these confidences because the procedural mechanisms for limiting disclosure of confidential information will not prevent revelation of relators' confidences to the California plaintiffs.

The supreme court has not addressed whether the erroneous disclosure of confidential, but unprivileged, attorney-client information is remediable by mandamus in the same manner as the erroneous disclosure of information protected by the attorney-client privilege. We note, however, that the Texas Disciplinary Rules of Professional Conduct make no distinction between privileged and unprivileged matters with regard to an attorney's duty to maintain the confidentiality of information relating to a client. *See* TEX. DISCIPLINARY R. PROF. CONDUCT 1.05(a). Irrespective of whether the information is privileged under Rule 503 of the Texas Rules of Civil Evidence, the policy in Texas is to disallow the attorney's revelation of client information except to the limited extent reasonably necessary to resolve the conflict between the attorney and client. TEX. DISCIPLINARY R. PROF. CONDUCT 1.05(c)(5). In light of this policy, we hold that the same protections should apply to both privileged and unprivileged confidential information whenever the underlying lawsuit is a conflict between attorneys and their former clients. Accordingly, relators have demonstrated the inadequacy of their potential remedy by appeal from a final judgment in this case.

## CONCLUSION

Relators have established both that the respondent judge clearly abused his discretion in denying the motion to strike the petition in intervention and that they have no adequate appellate remedy. Accordingly, mandamus will lie to correct this error. *Walker,* 827 S.W.2d at 843. However, relators have not demonstrated the necessity of further extraordinary relief on any other issue. We conditionally grant the writ of mandamus directing Judge Mancias to vacate his "Order Denying Defendants' Renewed Motion to Strike Intervention." This writ will not issue, however, unless the respondent fails to comply with this opinion.