# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-06-00598-CV

**Clifford Zeifman, Appellant**

**v.**

**Sheryl Diane Michels and Austin Independent School District, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
### NO. D-1-GN-06-002930, HONORABLE WILLIAM E. BENDER, JUDGE PRESIDING

### O P I N I O N

This appeal arises within a statutory scheme intended to ensure the best interests of children following their parents' divorce. It also implicates the principles underlying our adversarial system, which we trust to ensure justice and truth under our law through the refining of issues achieved when parties and their able advocates receive their "day in court" under fair procedures.

Ex-spouses Sheryl Michels and Clifford Zeifman, aided by their respective legal teams, are embroiled in a controversy concerning the best interests of their two children, A.A. and G.L. The background of this controversy is detailed in our opinions in prior proceedings that have arisen from it in recent months.[1] To summarize, Michels and Zeifman "have pursued extensive and

---

[1] *See Zeifman v. Michels*, 212 S.W.3d 582 (Tex. App.—Austin 2006, pet. denied); *see also In re Zeifman*, No. 03-06-00601-CV, slip op. at 1-2 (Tex. App.—Austin Nov. 22, 2006) (orig. proceeding) (mem. op.); *In re Zeifman*, No. 03-07-00075-CV, slip op. at 1 (Tex. App.—Austin Mar. 16, 2007, orig. proceeding) (memo. op.). We have taken judicial notice of our files from these prior related proceedings.

acrimonious litigation over which [elementary] school A.A. should attend,"[2] a conflict that evidently has spread to other issues involving both A.A. and a second child, G.L.[3] Informed by the harsh tenor of the litigation and legal expenses that, the record of these proceedings reveal, are spiraling into the hundreds of thousands of dollars, we have previously suggested that "the adversarial processes of our court system," at least when utilized in this manner, "may not be the best means" of either deciding which school A.A. should attend or of ensuring this young child's best interests.[4]

This latest appeal involves a contention by Zeifman that Michels and her lawyers sought to advance their interests by unethically circumventing the procedural protections that our adversarial justice system provides him. The conduct he alleges is indeed disturbing. In our August 4, 2006 opinion in Cause No. 03-05-00533-CV, we held that, on the record before us, the district court had abused its discretion in modifying the comprehensive terms of the parties' original agreed divorce decree to give Michels sole power to make educational decisions on behalf of A.A. *See Zeifman v. Michels*, 212 S.W.3d 582, 596 (Tex. App.—Austin 2006, pet. denied); *id.* at 596 (Pemberton, J., concurring). During the period in which the district court's order was in effect, Michels had exercised her authority to withdraw A.A. from the Austin Independent School District's (AISD) Bryker Woods Elementary, the school in which the original agreed divorce decree had

---

[2] *In re Zeifman*, No. 03-06-00601-CV, slip op. at 2.

[3] *In re Zeifman*, No. 03-07-00075-CV, slip op. at 1.

[4] *In re Zeifman*, No. 03-06-601-CV, slip op. at 2. We also observed that "A.A.'s parents—not the courts or other third parties—are in the best position, perhaps with the assistance of a competent mediator, to make that determination in A.A.'s best interests, thereby avoiding extensive and acrimonious litigation that could adversely impact A.A., their other child, each other, and possibly others."

required the child to be enrolled, and enrolled her in St. Andrews. *Zeifman*, 212 S.W.3d at 586.

After we had released our opinion but before mandate issued, Michels sued AISD seeking injunctive relief to prevent the district from permitting Zeifman to enroll A.A. at Bryker Woods or any other AISD school as the 2006 school year began. Michels alleged that permitting such enrollment would (1) violate Michels's exclusive parental rights (at least until the mandate in No. 05-533-CV issued)[5] to make educational decisions on behalf of A.A. and (2) "actively assist[] . . . and aid[] and abet[] Clifford Zeifman in the violation of a valid court order," a December 17, 2004, standing order governing Travis County family law cases.[6]

While Michels's new lawsuit was directed at controlling Zeifman's actions—and despite the fact that he was A.A.'s father, joint-managing conservator, and her opposing party in ongoing litigation concerning A.A.'s education—Michels did not name Zeifman as a party. Zeifman

---

[5] Michels pleaded that she "acknowledges that on 4 August 2006 the Third Court of Appeals issued an opinion reversing the decision of the trial court with respect to the 27 May 2005 order [modifying the original divorce decree to give her sole authority over A.A.'s educational decisions]. However, Sheryl Michels advises this Court that mandate has not been issued with respect to the Court of Appeals' ruling and that, accordingly, the 27 May 2005 order is still valid and enforceable." This proposition is incorrect as a matter of law. *See Flanary v. Wade*, 113 S.W. 8, 10 (Tex. 1908) (upon issuance of appellate opinion reversing trial court's injunction, injunction ceased to be enforceable by contempt); *see also In re Bohart*, 743 F.2d 313, 319-21 (5th Cir. 1984); *Humble Exploration Co. v. Walker*, 641 S.W.2d 941, 943 (Tex. App.—Dallas 1982, orig. proceeding).

[6] This standing order, applicable to "every divorce suit and every suit affecting the parent-child relationship filed in Travis County" after January 1, 2005, prohibits parties, "while the lawsuit is pending before the court," from actions including "[d]isrupting or withdrawing the children from the school or day-care facility where the children are presently enrolled, without the written agreement of both parents or an order of this Court." *See* Travis Co. Standing Order Regarding Children, Property and Conduct of the Parties (Travis Co. Dist. Clerk's File No. 121,012 (Local Rules and Orders)) (effective Jan. 1, 2005). Although the parties' 1997 divorce decree predated the standing order, Michels alleged that Zeifman had made himself subject to the order by filing a cross-petition in a second modification proceeding she had initiated in 2005 concerning G.L.

3

represents that, even worse, Michels sought to avoid his notice or detection by deliberately filing her lawsuit on a day—Monday, August 14—on which "Sheryl and her attorneys were aware" from a vacation letter and prior correspondence "that Clifford's attorney was out of town attending the Advanced Family Law Course in San Antonio."[7]

At 2:48 p.m. on August 14, Michels obtained an ex parte temporary restraining order against AISD. On the following Friday, August 18,[8] Zeifman filed a petition in intervention, motion to dismiss, and motion for sanctions. Zeifman pleaded that he had a justiciable interest in Michels's new lawsuit as A.A.'s father and co-managing conservator, and as respondent and counter-petitioner in the ongoing litigation. Zeifman moved to dismiss Michels's suit as an improper attempt to circumvent the district court's jurisdiction over the divorce decree and this Court's jurisdiction over "the issue of [A.A.'s] education." Zeifman also urged that Michels's attempt to invoke the district court's jurisdiction was inconsistent with the position she had taken only a few months earlier in a second modification proceeding she had initiated under the divorce decree in 2005. Specifically, in response to a counter-petition from Zeifman to modify the educational-choice portions of the decree, Michels had filed a plea to the jurisdiction asserting that the district court lacked subject matter jurisdiction over the counter-petition while the appeal of the decree modifications in No. 05-533 was pending. The district court then "agree[d] that it has no jurisdiction to modify the order addressing the education of [A.A.] because of the current appeal of that matter" but overruled Michels's plea

---

[7] The publicly available State Bar of Texas publications from this course state that it was held between August 14-17, 2006.

[8] This date corresponds to the day after the 2006 State Bar Advanced Family Law Course was scheduled to end.

because it "retains jurisdiction with respect to all other aspects of the parent-child relationship as to both children under Chapters 155 and 156 of the Texas Family Code."[9]

Zeifman sought sanctions under rule 13 of the Texas Rules of Civil Procedure, chapters 9 and 10 of the civil practice and remedies code, and the district court's inherent power. He complained chiefly that Michels had filed a "frivolous and groundless" separate suit against AISD, rather than seeking relief in the divorce and custody case, to circumvent the jurisdiction of the district court and this Court, and in a manner deliberately calculated to avoid his knowledge or participation for a short, but critical, period of time. Zeifman argues that these tactics, coupled with subsequent events, reveal Michels's sole design to have been delay. He represents that he had been scheduled to have custody of A.A. during the week of August 14, that classes at Bryker Woods were to begin on August 15, and that custody was scheduled to return to Michels the following week. Thus, Zeifman maintains, Michels filed what proved to be a "one-week lawsuit" solely to prevent him from enrolling A.A. during his custody week and to "buy time" until custody returned to Michels the following week and she could enroll A.A. in St. Andrews.

A hearing on Zeifman's intervention, motion to dismiss, and motion for sanctions was set on the third business day thereafter, Wednesday, August 23. On Monday, August 21, Michels filed a rule 11 agreement with AISD, dated August 18, whereby the district agreed not to permit A.A. to be enrolled at or attend Bryker Woods "until such time as [AISD] is presented with a final, non-

---

[9] Order on Plea to the Jurisdiction of Sheryl Diane Michels, May 24, 2006. On appeal, Zeifman points out that Michels subsequently made similar arguments in the district court, after she filed a petition for review of this Court's judgment in the supreme court, in resisting his efforts to enforce his rights under the original divorce decree.

appealable order expressly authorizing such enrollment and attendance," in return for Michels's agreement to dismiss her pending suit. Michels filed a notice of non-suit on August 22 and, on the day of the hearing, filed a motion to strike Zeifman's intervention. After a hearing in which only argument was presented, the district court signed an "Order Confirming Nonsuit" and, by separate order, granted Michels's motion to strike intervention, dismissed as moot Zeifman's motion to dismiss, and denied Zeifman's motion for sanctions.

Zeifman brings two issues, contending that the district court abused its discretion in striking his intervention and in denying his sanctions motion. We agree that the district court abused its discretion in striking Zeifman's intervention. Furthermore, because this ruling was undisputedly a predicate for the district court's ruling on Zeifman's sanctions motion, we remand Zeifman's sanctions motion for further proceedings.

As this Court has previously observed, the right of intervention is ultimately rooted in equity. *Highlands Ins. Co. v. Lumberman's Mut. Cas. Co.*, 794 S.W.2d 600, 601 (Tex. App.—Austin 1990, no pet.) ("The right of intervention is an equitable right. It does not depend upon a rule or statute for its existence."). This right is recognized in rule 60 of the Texas Rules of Civil Procedure, which provides that "[a]ny party may intervene by filing a pleading, subject to being stricken by the court for sufficient cause on the motion of any party." Tex. R. Civ. P. 60; *see Highlands Ins. Co.*, 794 S.W.2d at 601-02.

Sufficient cause exists for striking an intervention when a would-be intervenor faced with a motion to strike cannot demonstrate a justiciable interest in the lawsuit. *Mendez v. Brewer*, 626 S.W.2d 498, 499-500 (Tex. 1982); *see Law Offices of Windle Turley, P.C. v. Ghiasinejad*,

109 S.W.3d 68, 70 (Tex. App.—Fort Worth 2003, no pet.); *McCord v. Watts*, 777 S.W.2d 809, 812 (Tex. App.—Austin 1989, no writ). This justiciable interest may be either legal or equitable in nature but must be present and not merely remote or contingent. *Mendez*, 626 S.W.2d at 499; *McCord*, 777 S.W.2d at 811-12 ("An intervenor must show some present legal or equitable interest in the subject matter which makes it proper for him to participate in the proceedings."). This interest is "analogous to that essential for a party to maintain or defend an action." *McCord*, 777 S.W.2d at 811-12 (citing 1 McDonald, Texas Civil Practice § 3.47 (1981 ed.)); *see also Law Offices of Windle Turley*, 109 S.W.3d at 70 ("A party has a justiciable interest in a lawsuit, and thus a right to intervene, when his interests will be affected by the litigation."). Whether an intervenor possesses a present justiciable interest is determined, in the first instance, by the facts alleged in the petition in intervention, which "also should be construed along with the allegations of fact set forth in the pleadings of the other parties." *McCord*, 777 S.W.2d at 812.

While the determination of whether a justiciable interest exists based on the pleadings would appear to present a pure question of law, *cf. Texas Parks & Wildlife Dept. v. Miranda*, 133 S.W.3d 217, 226-27 (Tex. 2004), the ultimate determination of whether an intervention should be struck, even if a justiciable interest is shown, has long been held to be vested in the sound discretion of the trial court. *Mendez*, 626 S.W.2d at 499 ("It is settled law that a motion to strike an intervention is addressed to the sound discretion of the trial court."); *Law Offices of Windle Turley*, 109 S.W.3d at 70; *McCord*, 777 S.W.2d at 812. We accordingly review a trial court's decision on a motion to strike an intervention for abuse of discretion. *See In re Lumbermens Mut. Cas. Co.*, 184 S.W.3d 718, 722 (Tex. 2006) (citing *Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.*,

7

793 S.W.2d 652, 657 (Tex. 1990)). An abuse of discretion denotes "act[ing] without reference to guiding rules or principles; in other words . . . the act was arbitrary or unreasonable." *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).

During oral argument, Michels conceded that Zeifman had shown a justiciable interest in her suit against AISD, at least at its inception. Zeifman's justiciable interest is obvious from the face of his petition, if not from Michels's own petition. Michels's suit sought to prevent Zeifman from enrolling A.A. in Bryker Woods or other AISD schools. Both Zeifman and Michels pleaded that Zeifman is A.A.'s father. Zeifman pleaded that he was joint managing conservator; Michels requested the district court to take judicial notice of the file in their divorce case, which demonstrated Zeifman's joint managing conservatorship. Both Zeifman and Michels recounted the history of their litigation concerning where A.A. should attend elementary school, including the opinion of this court reversing the district court's order granting Michels sole control over A.A.'s educational decisions. Michels further alleged that she and Zeifman had each filed additional motions to modify the divorce decree and were currently litigating these issues.

Even if Zeifman demonstrated a justiciable interest in her suit, Michels contends, he has not demonstrated that the district court abused its discretion in striking his intervention. She relies on the proposition that "[i]t is only an abuse of the trial court's discretion to strike a petition in intervention if the intervenor: (1) could have brought the same action, or any part of it, in its own name; (2) the intervention would not complicate the case by excessively multiplying the issues; and (3) the intervention is almost essential to effectively protect the intervenor's interest." Michels derives these principles from the Texas Supreme Court's decision in *Guaranty Federal*.

8

*See* 793 S.W.2d at 657; *see also Intermarque Auto Prod., Inc. v. Feldman*, 21 S.W.3d 544, 549 (Tex. App.—Texarkana 2000, no pet.). Applying her characterization of the *Guaranty Federal* holding, Michels contends that "Zeifman could not have brought the same action against the Austin Independent School District that [she] filed," which she depicts as seeking to protect her personal rights as a parent to solely control A.A.'s educational decisions (which she could continue to enforce, in her view, until this Court's mandate issued in the previously pending litigation) and rights unique to her under the Travis County standing order. Michels adds that Zeifman's suit would have "complicated" her case by interjecting issues—specifically, a motion to dismiss and a motion for sanctions—that were not raised by the original parties. She further emphasizes that Zeifman did not make a record of the district court's proceedings, nor request findings of fact and conclusions of law, requiring us to assume that the district court found all factual issues in support of any legal ground that could have supported its order. *See Feldman v. Marks*, 960 S.W.2d 613, 614 (Tex. 1996); *Land v. AT & S Transp., Inc.*, 947 S.W.2d 665, 668 (Tex. App.—Austin 1997, writ denied).

Michels misconstrues the *Guaranty Federal* holding in several ways. In that case, the Texas Supreme Court first held that a trial court abused its discretion in striking an intervention sua sponte, as rule 60 presumptively permitted an intervention unless a motion to strike was filed. 793 S.W.2d at 657 (citing Tex. R. Civ. P. 60). The supreme court went on to observe:

> Furthermore, under Rule 60, a person or entity has the right to intervene if the intervenor could have brought the same action, or any part thereof, in his own name, or, if the action had been brought against him, he would be able to defeat recovery, or some part thereof. The interest asserted by the intervenor may be legal or equitable. Although the trial court has broad discretion in determining whether an intervention should be stricken, it is an abuse of discretion to strike a plea in intervention if (1) the intervenor meets the above test, (2) the intervention will not

9

complicate the case by an excessive multiplication of the issues, and (3) the intervention is almost essential to effectively protect the intervenor's interest.

*Id.* (internal citations omitted). The supreme court held that these conditions were met in that case and that, accordingly, the district court had abused its discretion in striking the intervention. *Id.* at 757-58.

While *Guaranty Federal* does identify a set of equitable conditions under which the striking of an intervention would be an abuse of discretion, it does not, contrary to Michels's assertion, establish the "only" or exclusive circumstances in which that would be so. *See In re Lumbermens Mutual*, 184 S.W.3d at 722-29 (based on balancing of different equitable considerations, concluding that court of appeals had abused its discretion in barring intervention on appeal)[10]; *see also In re Estate of York*, 951 S.W.2d 122, 126 (Tex. App.—Corpus Christi 1997, no pet.) ("[W]e question whether the general rule of *Guaranty Federal*, which allows some discretion to strike the intervention, even applies to a probate proceeding in which interested parties attempt to assert claims which will otherwise be adjudicated against them in their absence.").

---

[10] *Lumbermens Mutual* involved the appellate intervention of an insurer after its insured, for whom it had paid the appeal bond, abandoned potentially dispositive issues impacting claims within the scope of coverage. *See In re Lumbermens Mutual*,184 S.W.3d 718, 720-21 (Tex. 2006). The supreme court determined that the insurer had invoked "the equitable doctrine" of virtual representation, and then considered "other factors [that] may weigh against allowing intervention after final judgment has been rendered, including the length of time the insurer had known of its interest in the case before attempting to intervene, the extent of prejudice the existing parties may suffer from the would-be intervenor's delay, the extent of prejudice to the would-be intervenor if intervention is denied, and the existence of unusual circumstances militating for or against a determination that the application is timely." *Id*. at 726. The supreme court held that the court of appeals abused its discretion in refusing to allow the intervention. *Id*. at 729.

Furthermore, Michels both misstates the first element of the *Guaranty Federal* framework and misapplies it. This element is not limited to whether the would-be intervenor "could have brought the same action, or any part of it, in its own name," as Michels states, but also is satisfied "if the action had been brought against him, he would be able to defeat recovery, or some part thereof."[11] Moreover, the first element of the *Guaranty Federal* framework is not as restrictive as Michels suggests:

> The requirement [for intervention] has been stated, not exhaustively, to demand that "the intervenor's interest . . . be such, that if the original action had never been commenced, and he had first brought it as the sole plaintiff, he would have been entitled to recover in his own name to the extent at least of a part of the relief sought; or if the action had first been brought against him, he would have been able to defeat a recovery, in part at least." *The statement, a useful guide, does not reach all situations.* It does not cover, for example, the case in which the intervenor-defendant could not have been sued directly, yet a judgment for plaintiff may lead to an action over against the intervenor or otherwise seriously prejudice the intervenor, and the intervenor's intervention is necessary to assure proper defense of the claim. Nor does it meet the situation in which the intervenor asserts a claim adverse to both parties, though in special circumstances such an intervention may be proper . . . .

1 Roy W. McDonald & Elaine A. Grafton Carlson, Texas Civil Practice § 5.80, at 967-68 (2d ed. 2004) (citations omitted) (emphasis added). Citing this commentary with approval, we held in *McCord* that while a child's grandparents in that case could not have initiated an original suit affecting the parent-child relationship, they did possess a justiciable interest in their grandchild's best interests that could support intervention in the divorce and custody suit initiated by the child's parents. *McCord*, 777 S.W.2d at 811-13; *see also Jenkins v. Entergy Corp.*, 187 S.W.3d 785, 797

---

[11] We thus reject Michels's contention that "[a] proper intervention requires that the intervenor be seeking some sort of affirmative relief from the court."

(Tex. App.—Corpus Christi 2006, pet. denied) ("Even where an intervenor has not or could not have been sued directly, if a judgment for the plaintiff may lead to an action against the intervenor or otherwise seriously prejudice the intervenor, the intervention is necessary to assure a proper defense against the claim."). We conclude that even if Zeifman could not assert precisely the same claims or defenses as Michels and AISD, he possessed a justiciable interest in the suit, and was potentially prejudiced by it, in a manner that satisfies the equitable considerations underlying the first element of the *Guaranty Federal* analysis. We likewise reject Michels's contentions that Zeifman's intervention to protect his interests and join issue with Michels would "complicate" the litigation or "excessively multiply" the issues relative to the benefits his participation would yield. *McCord*, 777 S.W.2d at 812 (trial court had discretion to determine that grandparents' intervention "may enhance [its] ability to adjudicate what is in the best interest of the child.").[12] The district court would have abused its discretion in striking his intervention on these grounds.

Michels ultimately relies on the fact that she subsequently non-suited her claims against AISD, suggesting that this tactic extinguished any justiciable interest Zeifman might have possessed in the action at its inception, *see Potash Corp. of Saskatchewan, Inc. v. Mancias*, 942 S.W.2d 61, 63-65 (Tex. App.—Corpus Christi 1997, no writ), or otherwise divested him of his

---

[12] We find it interesting that Michels would decry Zeifman's intervention as "complicating" their litigation by "multiplication" of issues where she has done precisely that by foregoing the parties' ongoing proceedings under the divorce decree and filing a related but separate lawsuit (leading to a separate appeal), ensnaring a third party in her domestic dispute, yet oddly not naming Zeifman as a party in that separate proceeding—who, she acknowledged at oral argument, clearly had a justiciable interest. If intervention is ultimately an equitable concept, *Highlands Ins. Co. v. Lumberman's Mut. Cas. Co.*, 794 S.W.2d 600, 601 (Tex. App.—Austin 1990, no pet.), Michels arguably would be estopped from arguing that Zeifman's intervention would have complicated or excessively multiplied the issues in litigation.

right to intervene. Michels overlooks the fact that Zeifman filed his intervention on August 18, while she did not file her non-suit until the following week. As of the time of Michels's non-suit, Zeifman, as we have determined, was a proper party. Michels's non-suit thus could not defeat or render moot his claims for sanctions and for attorney's fees under rule of civil procedure 13, and sections 9 and 10 of the civil practice and remedies code. *Allstate Ins. Co. v. Hellman*, 159 S.W.3d 640, 642-43 (Tex. 2005) (where merits of UDJA claim were rendered moot, claim for attorney's fees "'breathes life' into this appeal and prevents it from being moot.") (quoting *Camerena v. Texas Employment Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988)); *Tri-M Erectors, Inc. v. Clearwater Constructors, Inc.*, 788 S.W.2d 906, 907-08 (Tex. App.—Austin 1990, writ denied); *see* Tex. R. Civ. P. 162 ("Any dismissal pursuant to this rule shall not prejudice the right of an adverse party to be heard on a pending claim for affirmative relief or excuse the payment of all costs taxed by the clerk. A dismissal under this rule shall have no effect on any motion for sanctions, attorney's fees or other costs pending at the time of dismissal . . . .").

For these reasons, we hold that the district court abused its discretion in striking Zeifman's intervention, accordingly sustain Zeifman's first issue, and reverse the district court's striking of the intervention. During oral argument, Michels conceded that the district court's order denying sanctions was necessarily predicated upon its order striking Zeifman's intervention. Thus, we also reverse the district court's order denying sanctions and remand for further proceedings.

Regarding sanctions, rule 13 of the Texas Rules of Civil Procedure allows a trial court to impose sanctions against an attorney, a represented party, or both, who file groundless pleadings brought in bad faith or brought for the purpose of harassment. Tex. R. Civ. P. 13. Additionally,

13

chapter 10 of the Civil Practices and Remedies Code allows a trial court to impose sanctions against a person, party, or both for advancing frivolous pleadings or motions. Tex. Civ. Prac. & Rem. Code Ann. §§ 10.001(1), .004(a) (West 2002). In light of our observation that Michels's conduct as alleged by Zeifman "is indeed disturbing," the district court on remand should carefully consider the facts known by Michels at the time she filed suit against AISD when determining whether sanctions are appropriate. *See Law Offices of Windle Turley, P.C. v. French*, 164 S.W.3d 487, 490-94 (Tex. App.—Dallas 2005, no pet.) (upholding sanctions order where law firm filed suit against former clients for improper purpose); *Martin v. Zieba*, No. 03-03-00584-CV, 2004 Tex. App. LEXIS 3742, at *9-*13 (Tex. App.—Austin 2004, no pet.) (mem. op.) (upholding sanctions order where husband filed pleadings in child custody case for improper purpose); *see also Low v. Henry*, 50 Tex. Sup. J. 606, 2007 Tex. LEXIS 320, *6-*17 (Tex. Apr. 20, 2007).[13]

_____

Bob Pemberton, Justice

Before Justices Patterson, Pemberton and Waldrop

Reversed and Remanded

Filed: May 11, 2007

_____

[13] We note that Zeifman did not obtain a reporter's record below, nor requests findings of fact and conclusions of law. As Michels observes, such devices enable an appellate court to review a trial court's rulings to award (or not award) sanctions.