

NUMBER 13-11-00354-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**ESTEBAN HURTADO, GERARDO HURTADO,
SAN JUANITA DAVILA, AND CRISTELA HURTADO,
INDIVIDUALLY AND AS NEXT FRIEND OF J.L.H. III,
M.A.H., AND B.A.H., MINORS, AND CRISTELA
HURTADO, AS ADMINISTRATRIX OF THE ESTATE
OF ALMA ROSA HUERTA, DECEASED,** Appellants,

v.

**MARIA DE JESUS GAMEZ, INDIVIDUALLY
AND AS HEIR OF JUAN JOSE GAMEZ,
DECEASED, AND AS NEXT FRIEND OF J.J.G.
JR. AND C.M.G., MINORS, AND ADRIAN
GARCIA D/B/A MAGNUM FORCE SECURITY,** Appellees.

---

On appeal from the 398th District Court
of Hidalgo County, Texas.

---

# MEMORANDUM OPINION[1]

## Before Justices Rodriguez, Benavides, and Perkes
## Memorandum Opinion by Justice Rodriguez

Appellants, Esteban Hurtado, Gerardo Hurtado, San Juanita Davila, and Cristela Hurtado, individually and as next friend of J.L.H. III, M.A.H., and B.A.H., minors, and Cristela Hurtado, as administratrix of the estate of Alma Rosa Huerta, deceased, (the Hurtados), filed a motion to abate and a plea in intervention in a suit filed by appellees, Maria De Jesus Gamez, individually and as heir of Juan Jose Gamez, deceased, and as next friend of J.J.G. Jr. and C.M.G., minors, (the Gamezes) against Adrian Garcia d/b/a Magnum Force Security (Magnum Force). The Gamezes' friendly suit involved the settlement of a wrongful-death claim. The trial court denied the Hurtados' plea in abatement filed in this friendly suit and granted the Gamezes' motion to strike, which effectively dismissed the Hurtados' plea in intervention.

By seven issues, which we renumber as five, the Hurtados contend that: (1) the trial court erred when it denied their plea in abatement because the doctrine of dominant jurisdiction applied; (2) the trial court erred when it denied their plea in intervention because they had a justiciable interest in the Gamezes' friendly suit; (3) the trial court erred when it granted relief to the Gamezes because the order was not final; (4) the trial court erred when it applied the settlement distribution rule set out in *Texas Farmers*

---

[1] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

*Insurance Company v. Soriana*[2] because the parties had unequal legal standing under the law; and (5) the trial court abused its discretion when it exercised probate powers in a manner inconsistent with the probate code and Texas case law. We affirm.

## I. Background

Juan Huerta, an employee of Magnum Force, shot and killed his wife, Alma Rosa Huerta. He also shot and killed Juan Gamez, who was with Mrs. Huerta at the time. Mr. Gamez had two minor children, and Mrs. Huerta had three minor children.

On January 15, 2010, the Hurtados filed suit against Garcia d/b/a Magnum Force Security and First Mercury Insurance Company (First Mercury) in Hidalgo County Court at Law No. 2, Cause Number CL-10-0112-B.[3] They asserted wrongful-death, survival, and bystander claims against Garcia for the death of Mrs. Huerta and requested a declaratory judgment against First Mercury.[4] The Hurtados later amended their petition to add the following defendants: the administratrix of the estate of Juan Jose Gamez, deceased; and the heirs at law.

On January 25, 2010, the Gamezes filed suit against Garcia d/b/a/ Magnum Force, on behalf of Juan Gamez's minor children, in the 398th Judicial District Court of Hidalgo

---

[2] *See Tex. Farmers Ins. Co. v. Soriana*, 881 S.W.2d 312, 315 (Tex. 1994) ("When faced with a settlement demand arising out of multiple claims and inadequate proceeds, an insurer may enter into a reasonable settlement with one of the several claimants even though such settlement exhausts or diminishes the proceeds available to satisfy other claims.").

[3] First Mercury provided insurance for Garcia d/b/a Magnum Force, the proceeds of which are at issue in this appeal.

[4] As part of the declaratory relief, the Hurtados requested stipulations that they were covered under the insurance, that Mrs. Huerta's death was an individual occurrence or incident, and that "Defendant Decedent's 'Stowers letter' does not preclude minor children who have no parents but would seek protection form [sic] the government through the Court system which includes this Court, to act a PARENS PATRIAE."

County, Texas, Cause Number C-254-10-I.[5]   It is undisputed that the Gamezes filed this friendly suit to obtain the approval, entry, and enforcement of a settlement agreement regarding the Gamez minors' claims.   *See Brightwell v. Rabeck*, 430 S.W.2d 252, 256 (Tex. Civ. App.—Fort Worth 1968, writ ref'd n.r.e.) ("[A friendly suit] is such at its institution and remains such if the proposed settlement is approved—with judgment rendered in accord.   It has not the character of an adversary proceeding though it might acquire such character if the court refuses to approve the settlement suggested—or the parties thereto refuse to agree to accept a judgment awarding a settlement amount different from that proposed.   In the event all parties do not agree upon the judgment to be entered the proceedings by way of 'friendly suit' are at an end and the case, though still on the docket, becomes a case to be tried under procedure truly adversary.   It is not a case litigated whether the settlement be approved or disapproved.").   It is also undisputed that the Gamezes asked the district court to determine heirship and to declare that no administration was pending and none was necessary.

On March 4, 2010, the Hurtados filed a plea in abatement in the Gamez friendly suit, seeking to have the suit abated and transferred to County Court at Law No. 2.[6] They argued that the doctrine of dominant jurisdiction applied.   In response, the

---

[5] First Mercury settled with the Gamezes for the policy limits and was not a named defendant in their friendly suit.   The Hurtados attempted to name First Mercury as an appellee in their amended notice of appeal.   However, because First Mercury was not a party to the underlying Gamez lawsuit, we concluded that we lacked jurisdiction over First Mercury and ordered First Mercury removed as a party to this appeal.   *See* TEX. R. APP. P. 25.1(b).   We also denied First Mercury's motion for sanctions.

[6] Based on our review of the transcript of the abatement hearing, there may have been as many as four suits filed in this matter.   However, we find no other mention in the record of the other two suits.   At the hearing on their plea in abatement, the Hurtados argued only that the Gamezes' district court case should be abated and that the claims should be transferred to their county-court case.   The Hurtados did not urge that the probate issues should have been resolved in any other court or suit, and they do not make that argument on appeal.   Therefore, that matter is not before us.   *See* TEX. R. APP. P. 47.1.

4

Gamezes argued that the trial court should deny the Hurtados' plea in abatement because the county court at law and the district court were not courts with concurrent jurisdiction.

On March 4, 2010, the Hurtados also filed a plea in intervention in the Gamezes' friendly suit. In their plea, the Hurtados asserted claims against Garcia d/b/a Magnum Force for the shooting death of Mrs. Huerta—claims identical to those they had asserted against Garcia in their county court lawsuit.

The Gamezes filed a motion to strike the Hurtados' plea in intervention. In their motion, the Gamezes contended that the Hurtados had not indicated the reasons or rationale for filing an identical petition in the friendly suit—a friendly suit that had been filed for the limited purpose of finalizing and effectuating the settlement between the Gamezes and Garcia and not for purposes of full litigation and a trial on the merits.

The district court heard arguments on the Hurtados' plea in abatement on March 11, 2010, asked for supporting research and brief chronologies of the filings and the parties, and informed the parties that it would rule "soon." On March 24, 2010 at the friendly suit hearing, the district court heard arguments on the Hurtados' plea in intervention and on the Gamezes' motion to strike that plea. It also heard testimony offered by Maria Gamez regarding the details of the settlement. Among other things, Gamez testified that she believed settling the case for $300,000 was in the best interest of her children and that she believed that a $50,000 allocation for a home would be in their best interest. That same day the district court entered a declaration of heirship. The trial court took all other matters under advisement.

5

On March 29, 2010, the district court signed orders (1) denying the Hurtados' plea in abatement, (2) approving the Gamez settlement, and (3) granting the Gamezes' motion to strike the plea in intervention, thereby dismissing the Hurtados' plea in intervention. The Hurtados attempted to appeal the March 29, 2010 dismissal of their intervention, but this Court rejected their attempt, stating that we had no jurisdiction to hear the appeal until the trial court signed the final judgment. *See Hurtado v. Gamez*, No. 13-10-00158-CV, 2011 Tex. App. LEXIS 801, *1-3 (Tex. App.—Corpus Christi, Feb. 3, 2011) (mem. op.) (per curiam).

Approximately one year later, on March 21, 2011, the trial court signed a judgment titled "Final Judgment." This appeal followed.

## II. Abatement

By their first issue, the Hurtados contend that the trial court erred when it denied their plea in abatement. They argue that the district court should have transferred the case to County Court at Law No. 2, the court the Hurtados claim had dominant jurisdiction because they filed suit there before the Gamezes filed their friendly suit in district court. *See Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 247 (Tex. 1988) (explaining that when two lawsuits involving the same subject matter are filed in courts of concurrent jurisdiction, a party may file a motion to abate in one court, claiming the other court has dominant jurisdiction); *Curtis v. Gibbs*, 511 S.W.2d 263, 267 (Tex. 1974); *Sweezy Constr., Inc., v. Murray*, 915 S.W.2d 527, 531 (Tex. App.—Corpus Christi 1995, orig. proceeding). In response, the Gamezes urged that they properly filed suit in district court to effectuate a full and final settlement on behalf of the Gamez Estate and that the district

6

court had jurisdiction to hear probate matters that were necessary for the proper release of all claims on behalf of the Gamez Estate.   They asserted that the County Court at Law No. 2 and the 398th District Court did not have concurrent jurisdiction; thus, the doctrine of dominant jurisdiction did not apply.   We agree.

"Generally, if two lawsuits concerning the same controversy and parties are pending in courts of coordinate [concurrent] jurisdiction, the court in which suit was first filed acquired dominant jurisdiction to the exclusion of the other court . . . ."   *Sweezy Construction*, 915 S.W.2d at 531 (citing *Wyatt*, 760 S.W.2d at 248).   However, as the Gamezes argued,

> Hidalgo County has [five] statutory county courts [including County Court at Law No. 2] and one statutory probate court.   *See* [TEX.] GOV'T CODE [ANN.] § 25.1101 [West Supp. 2011]. . . .   ["]In a county that has a statutory probate court, a statutory probate court is the only county court created by statute with probate jurisdiction.["]. . .   [*I*]*d.* § 25.0003(e) [(West Supp. 2011)] . . . .

Further, "[i]n a non-probate matter, the district court may assume jurisdiction and determine the heirs of the decedent as long as there is no probate proceeding pending in the county court."   *McCuen v. Huey*, 255 S.W.3d 716, 733 (Tex. App.—Waco 2008, no pet.) (quoting *Jansen v. Fitzpatrick*, 14 S.W.3d 426, 432 (Tex. App.—Houston [14th Dist.] 2000, no pet.)); *see Estate of Maxey v. Sparks*, 559 S.W.2d 458, 460 (Tex. Civ. App.—Texarkana 1977, writ ref'd n.r.e.); *see also Trevino v. Lerma*, 486 S.W.2d 199, 200 (Tex. Civ. App.—Beaumont 1972, no writ) (finding that the district court had jurisdiction to determine heirship in suit to set aside a deed).

Because Hidalgo County had a statutory probate court, County Court at Law No. 2 could not have heard the probate matters brought by the Gamezes.   *See* TEX. GOV'T

7

CODE ANN. § 25.0003(e). Therefore, County Court at Law No. 2 and the 398th District Court did not have coordinate or concurrent jurisdiction. And no one asserts that the Gamezes had a probate proceeding pending in the Hidalgo County statutory probate court. *See Jansen*, 14 S.W.3d at 432. Therefore, the district court could have properly assumed jurisdiction and determined the Gamezes' probate matters in their wrongful-death lawsuit.

Reviewing the trial court's denial of the Hurtados' plea in abatement under an abuse of discretion standard, *see Dolenz v. Cont'l Nat'l Bank*, 620 S.W.2d 572, 575 (Tex. 1981); *Molano v. State*, 262 S.W.3d 554, 558 (Tex. App.—Corpus Christi 2008, no pet.), we conclude that the trial court did not act without reference to guiding rules and principles. Denial of the Hurtados' plea on the basis that the doctrine of dominant jurisdiction did not apply and that the district court properly assumed jurisdiction where no probate proceeding was pending in the statutory probate court was not an arbitrary or unreasonable ruling. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985); *Dolenz*, 620 S.W.2d at 575. We overrule the Hurtados' first issue.

### III. Intervention

By their second issue, the Hurtados contend that the trial court erred in striking their plea in intervention. They claim that in so doing, the trial court denied their right to due process and equal protection.

### A. Applicable Law

To intervene, a party must file a written pleading. *Diaz v. Attorney Gen.*, 827 S.W.2d 19, 22 (Tex. App.—Corpus Christi 1992, no writ); *see* TEX. R. CIV. P. 60 ("Any

8

party may intervene by filing a pleading, subject to being stricken by the court for sufficient cause on the motion of any party.")*. A party opposing an intervention must challenge it by filing a motion to strike the petition in intervention. TEX. R. CIV. P. 60; *In re Union Carbide Corp.* 273 S.W.3d 152, 154-55 (Tex. 2008) (orig. proceeding) (per curiam). After a motion to strike has been filed, the burden shifts to the intervenor to show that he is entitled to some recovery. *In re Union Carbide Corp.*, 273 S.W.3d at 154-55; *Henderson Edwards Wilson, L.L.P. v. Toledo*, 244 S.W.3d 851, 853 (Tex. App.—Dallas 2008, no pet.).

The sufficiency of the petition in intervention is tested by the allegations of fact on which the right to intervene depends. *Serna v. Webster*, 908 S.W.2d 487, 492 (Tex. App.—San Antonio 1995, no writ); *H. Tebbs, Inc. v. Silver Eagle Distribs.*, 797 S.W.2d 80, 84 (Tex. App.—Austin 1990, no writ). To determine the appropriateness of an intervention, the trial court can consider the allegations of fact in both the plea in intervention and the motion to strike. *Intermarque Auto. Prods. v. Deldman*, 21 S.W.3d 544, 548 n.7 (Tex. App.—Texarkana 2000, no pet.).

Relevant to this appeal, "[s]ufficient cause exists for striking an intervention when a would-be intervenor faced with a motion to strike cannot demonstrate a justiciable interest in the lawsuit." *Zeifman v. Michels*, 229 S.W.3d 460, 464 (Tex. App.—Austin 2007, no pet.) (op. on reh'g). The issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a justiciable interest in the outcome. *Austin Nursing Center v, Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). The justiciable interest the intervenor asserts in the lawsuit may be legal or equitable, *Guar. Fed. Sav. Bank v.*

9

*Horseshoe Oper. Co.*, 793 S.W.2d 652, 657 (Tex. 1990) (op. on reh'g); *Zeifman*, 229 S.W.3d at 464; *Gracida v. Tagle*, 946 S.W.2d 504, 506 (Tex. App.—Corpus Christi 1997, orig. proceeding), and must be more than a mere contingent or remote interest. *Zeifman*, 299 S.W.3d at 464; *Intermarque Auto. Prods.*, 21 S.W.3d at 549.

## B. Standard of Review

While the determination of whether a justiciable interest exists based on the pleadings would appear to present a pure question of law, the ultimate determination of whether an intervention should be struck, even if a justiciable interest is shown, has long been held to be vested in the broad discretion of the trial court. *Guar. Fed. Sav. Bank*, 793 S.W.2d at 657; *Guniganti v. Kalvakuntla*, 346 S.W.3d 242, 247 (Tex. App.—Houston [14th Dist.] 2011, no pet.). Therefore, we will review the trial court's granting of the Gamezes' motion to strike the Hurtados' intervention for an abuse of discretion. *See Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996). An abuse of discretion denotes "act[ing] without reference to guiding rules or principles; in other words . . . the act was arbitrary or unreasonable." *Zeifman*, 229 S.W.3d at 465 (quoting *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam)).

## C. Discussion

The Hurtados generally claim that their county court-at-law pleadings establish their right to intervene and that, through the pleadings, all elements have been met as required by law. Through this issue, the Hurtados appear to assert that they have a justiciable interest and, thus, standing to intervene in the Gamezes' friendly lawsuit because they "were the first to contact the insurance company in order to satisfy the

10

Stower's doctrine and therefore they were the first ones to have sent a valid, legal, enforceable offer."   They claim that the Gamezes, therefore, sent only an illusory offer, which had no value at all.   We are not persuaded by these arguments.

First, considering the allegations of fact in the Hurtados' petition in intervention, the Hurtados alleged only facts regarding their claims against Garcia for the shooting death of Mrs. Huerta.   *See Mancias*, 942 S.W.2d at 64; *Intermarque Auto. Prods.*, 21 S.W.3d at 548 n.7.   While the Hurtados claim they established their right to intervene in the friendly suit through these alleged facts, it is unclear how these controversies would have been resolved by resolution of the matters to be determined by the Gamezes' friendly suit. *See In re Union Carbide Corp.*, 273 S.W.3d at 155.   The plea did not include any factual allegations regarding the settlement of the wrongful-death claim between the Gamezes and Garcia.   It did not include allegations involving the trial court's review, approval, entry, and enforcement of the settlement agreement of the claim brought on behalf of the Mr. Gamez's minor children; the Hurtados did not clearly assert that they could have brought any part of the Gamezes' friendly-suit claim.   *See Serna*, 908 S.W.2d at 492; *H. Tebbs, Inc.*, 797 S.W.2d at 84.   Furthermore, even had such allegations been raised, we cannot conclude that any of the Hurtados would have been a proper party to bring, in his own name, all or part of the Gamezes' friendly suit.   *See Guar. Fed.*, 793 S.W.2d at 657. Therefore, based on our review of the pleadings, we conclude that the Hurtados did not show they had a justiciable interest in the friendly suit, i.e., that they were entitled to some recovery in that lawsuit.   *See In re Union Carbide Corp.*, 273 S.W.3d at 154-55; *Guar. Fed.*, 793 S.W.2d at 657; *Henderson Edwards Wilson*, 244 S.W.3d at 853; *Feldman*, 21

11

S.W.3d at 549.

Even if we were to conclude that the Hurtados had an interest in the subject matter of the friendly suit, the trial court could have determined, nonetheless, that the insurance money, while understandably a concern, was only a contingent interest in this friendly-suit context—that the Hurtados had only a contingent interest in the insurance money. *See Prescott v. Lone Star Life Ins. Co.*, 586 S.W.2d 703, 705 (Tex. Civ. App.—Waco 1979, no writ) (citing *Rogers v. Searle*, 533 S.W.2d 440, 442 (Tex. Civ. App.—Corpus Christi 1976, no writ)). The trial court could also have determined that the Hurtados' intervention in the Gamezes' friendly suit was not necessary to effectively protect that interest which they were advancing in a separate suit against appellee Adrian Garcia d/b/a Magnum Force Security, First Mercury, and the administratrix of the Gomez estate and the heirs.

Therefore, because the Gamezes challenged the Hurtados' justiciable interest—their standing to sue—in the friendly suit, we conclude that the trial court did not abuse its broad, sound discretion in granting the motion, if on these bases. *See Guar. Fed.*, 793 S.W.2d at 657; *Zeifman*, 229 S.W.3d at 465. We overrule the second issue.

## IV. Final Order

By their third issue, the Hurtados contend that the trial court erred in granting the Gamezes relief because there was no final order. The Hurtados direct this Court to the following four orders signed by the trial court in March 2010: (1) an order striking their intervention; (2) an order denying their requested abatement; (3) an order declaring heirship; and (4) an order approving the settlement. The Hurtados argue that all four orders could not be the final order.

12

We have, however, addressed this concern. In *Hurtado v. Gamez*, we concluded that the above-referenced orders were not final, appealable orders and dismissed that appeal for want of jurisdiction. *See* 2011 Tex. App. LEXIS 801, at *2-3.

The Hurtados now appeal from a judgment titled "Final Judgment" and signed by the trial court on March 21, 2011. They do not complain about the finality of this judgment. Accordingly, we overrule this third issue.

## V. Remaining Issues

Having concluded that the trial court did not abuse its discretion when it struck the Hurtados' plea in intervention, we need not address the remaining issues, which challenge the appropriateness of the *Soriana* settlement distribution rule and the trial court's exercise of probate powers in the Gamezes' friendly suit. *See* TEX. R. APP. P. 47.1. These issues go to the merits of a case in which the Hurtados do not have a justiciable interest. *See Henderson Edwards Wilson*, 244 S.W.3d at 855 (concluding that because the trial court did not err in striking the intervention, the appellant did not have a justiciable interest in the remaining issues raised on appeal); *Kenseth v. Dallas County*, 126 S.W.3d 584, 594 (Tex. App.—Dallas 2004, pet. denied) (determining that a party may only appeal orders in which he has a justiciable interest); *see also Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex.1993) (explaining that standing is a component of court's subject matter jurisdiction).

## VI. The Gamezes' Motion for Sanctions

The Gamezes urge this Court to award sanctions in the form of appellate fees and costs, including reasonable appellate attorneys' fees. *See* TEX. R. APP. P. 45 (providing

for damages in frivolous appeals in civil cases). They argue that the appeal is frivolous because the Hurtados' counsel failed to make any reasonable or good faith argument for why his clients had a justiciable interest in claims and issues involved in their friendly suit. *See Rivera v. Calvillo*, 986 S.W.2d 795, 799 (Tex. App.—Corpus Christi 1999, pet. denied). Based on our analysis of the issues above, we cannot conclude that the circumstances were "truly egregious" or that the Hurtados had no reasonable ground to believe the judgment would be reversed. *See Smith v. Marshall B. Brown,* 51 S.W.3d 376, 381 (Tex. App.—Houston [1st Dist.] 2001, pet. denied); *City of Houston v. Precast Structures, Inc.*, 60 S.W.3d 331, 340 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (op. on reh'g). We conclude, in our discretion, that the appeal is not frivolous and decline to award sanctions. *See Smith*, 51 S.W.3d at 381. We deny the Gamezes' motion for sanctions.

## V. Conclusion

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the
7th day of June, 2012.

14