Jody Martin PARR et al., Appellants,

v.

**FIRST STATE BANK OF SAN DIEGO,**
Texas, et al., Appellees.

No. 15278.

Court of Civil Appeals of Texas,
San Antonio.

Feb. 27, 1974.

Rehearing Denied March 27, 1974.

Bonilla, Read, Rodriguez, Beckman & Bonilla, Jack K. Dahlberg, Jr., A. J. Pope, III, Corpus Christi, Larry Watts, Houston, for appellants.

Kenneth Oden, Alice, John J. Pichinson, Corpus Christi, Homer E. Dean, Jr., Alice, for appellees.

BARROW, Chief Justice.

Appellants, Jody Martin Parr and the law firm of Bonilla, Read, Rodriguez, Beckman and Bonilla, have appealed from an interlocutory order entered on August 15, 1973, as amended on August 28, 1973, whereby Emilio Davila, Esq., was appointed receiver of the separate and community property of appellant, Jody Martin Parr, and her husband Archer Parr. A temporary injunction was purportedly granted against all appellants; however, neither the original order nor the amended order enjoins appellants from doing anything, or requires appellees to post a bond. Therefore, neither order has force or effect as an injunction. Rules 683, 684, Texas Rules of Civil Procedure; Goodwin v. Goodwin, 456 S.W.2d 885 (Tex.1970); Villalobos v. Holguin, 146 Tex. 474, 208 S.W.2d 871 (1948).

A complex chain of legal maneuvers commenced with the attempted dissolution by both parties of the marriage of Archer Parr and Jody Martin Parr.[1] A suit for divorce was filed by Jody Martin Parr in Nueces County on June 25, 1973, and a suit for divorce was filed by Archer Parr in Duval County on July 8, 1973. Each petition for dissolution of the marriage was accompanied by pleas for interlocutory relief, including temporary restraints on the other spouse's disposition of any property. The status of the two divorce suits is not before us.

On Saturday, August 4, 1973, appellee, First State Bank of San Diego, filed an *independent suit* in Duval County whereby it made demand for payment of two notes executed by Archer Parr and on which the remaining balance was the sum of $125,000, plus interest. These notes are secured by financing statements and security agreements on numerous head of livestock and items of ranching equipment. Bank alleged the pendency of the two divorce suits wherein relief was sought by the impounding of community funds. It is also alleged that Archer Parr had informed the Bank that there were community debts in excess of the value of assets. Bank sought and secured a temporary restraining order, without notice to defendants, enjoining Jody Martin Parr and Archer Parr, as well as the attorneys for each, from taking any action whatsoever in either divorce suit, or elsewhere, that would in any way affect the assets of the couple. The restraining order would prevent any determination or payment of temporary support in either divorce action. Bank also prayed that a receiver be appointed with full power and control over the community and separate estates of said couple. A hearing on the application for *temporary injunction and appointment of a* receiver was set for 10:00 a. m. on August 9, 1973.

On August 6, 1973, another suit was filed in Duval County by Alamo Lumber

---

1. See Ex parte Parr (1974), 505 S.W.2d 242.

Company wherein it asserted an unsecured claim on a past due open account in the amount of $8,534.62, and relief was sought similar to that prayed for by the Bank. This suit was consolidated with Bank's suit. On August 9, 1973, petitions of intervention were filed in Bank's suit by Duval County Ranch Company and Clinton Manges, wherein claims were asserted on a $30,000 note payable to the Ranch Company and on notes in the amount of $20,000 and $50,000 payable to Clinton Manges.[2] Interventions were also filed by the Alice National Bank on a promissory note, and E. D. Dwelle on an open account; but these parties subsequently took nonsuits and are not involved in this appeal.

■■ Appellants assert eighteen points of error. Since no affirmative relief was granted against her law firm, all points relate to Jody Martin Parr; therefore, she is hereinafter sometimes referred to as appellant. Her first six points complain of the trial court's failure to grant her motion to quash citation which was served upon her under Rule 106, T.R.C.P., by depositing same in the mail slot of her home on August 6 in the Alamo Lumber Company suit and on August 8 in the Bank suit. Her principal complaint is that the orders for substituted service were not based on sufficient evidence of probative value to show that it was impractical to obtain personal service upon her. See Kirkegaard v. First City National Bank of Binghamton, N. Y., 486 S.W.2d 893 (Tex.Civ.App.—Beaumont 1972, no writ). Such complaint is immaterial here in that appellant actually received the notice, filed her answer, and personally appeared at the hearing along with her attorneys. She thereby waived the necessity for service and any defects in the citation.

Rule 121, T.R.C.P.; Tautenhahn v. State, 334 S.W.2d 574 (Tex.Civ.App.—Waco 1960, writ ref'd n. r. e.); Hickey v. Sibley, 304 S.W.2d 165 (Tex.Civ.App.—Waco 1957, no writ). Complaint is made of the shortness of time for preparation, but no motion for continuance or delay was filed. See Long v. State, 423 S.W.2d 604 (Tex. Civ.App.—Houston [14th Dist.] 1968, writ ref'd n. r. e.). Accordingly, the points complaining of the form of citation are without merit.

■■ Appellant filed her plea of privilege subject to the motion to quash citation, and complains by her seventh assignment of error that the trial court was without jurisdiction to hear the application for temporary injunction and receivership while the plea of privilege is pending. However, the trial court has the power to make such interlocutory orders as may be necessary to preserve the status quo and the subject matter of the suit, including the granting of temporary injunctions and the appointment of a receiver. 1 McDonald, Texas Civil Practice, Venue, § 4.45–(V) (1965 rev.); Norrell v. National Motor Club of Texas, Inc., 498 S.W.2d 257 (Tex. Civ.App.—Tyler 1973, writ ref'd n. r. e.); Huffaker v. Lea County Electric Co-op., Inc., 344 S.W.2d 915 (Tex.Civ.App.—Amarillo 1961, writ ref'd n. r. e.); Donald v. Bankers Life Co., 133 S.W.2d 171 (Tex. Civ.App.—Dallas 1939, writ dism'd jdgmt. cor.); Rex Refining Co. v. Morris, 72 S.W. 2d 687 (Tex.Civ.App.—Dallas 1934, no writ); 6A Texas Practice, Lowe, Remedies, § 1443, Jurisdiction and Venue (1973). In Flynn v. Gulf Plains Grain & Elevator Co., 430 S.W.2d 525 (Tex.Civ.App.—Waco 1968, no writ), it was held that the trial court was without jurisdiction to grant a

2. On June 28, 1972, Archer Parr executed a note in the principal sum of $20,000 payable to Clinton Manges on June 28, 1980.

On February 12, 1973, Archer Parr executed a note in the principal sum of $50,000 payable to Clinton Manges on August 12, 1973.

On June 28, 1972, Archer Parr executed a note in the principal sum of $30,000 payable to Duval County Ranch Company on June 28, 1980.

All three of these notes are secured by certain goods, chattels and personal property as shown on a financial statement attached to a mortgage executed by Archer Parr on February 12, 1973.

temporary injunction while a plea of privilege was pending. Nothing was cited to support this holding, and we do not deem it authoritative. Appellant's seventh point is overruled.

Appellant complains by ten points of the appointment of the receiver and of the powers given to him. She essentially urges by said assignments of error that the evidence does not show the necessity for a receivership; and, in any event, the receiver here was given broader authority than authorized by law or even prayed for by appellees.

Article 2293, Tex.Rev.Civ.Stat.Ann. (1971), authorizes the court to appoint a receiver in certain cases, including: (1) in an action by a creditor to subject any property or fund to his claim; (2) in an action by a mortgagee for the foreclosure of his mortgage and sale of the mortgaged property, when it appears that the mortgaged property is in danger of being lost, removed or materially injured; or that the condition of the mortgage has not been performed and the property is probably insufficient to discharge the mortgage debt; (3) in cases where a corporation is insolvent; and (4) in all other cases where receivers have heretofore been appointed by the usages of the court of equity.

■ It is uniformly held that a creditor, to be entitled to a receivership, must be a secured creditor. Carter Bros. & Co. v. Hightower, 79 Tex. 135, 15 S.W. 223 (1890); Trevino v. Graves, 418 S.W.2d 529 (Tex.Civ.App.—Houston [1st Dist.] 1967, no writ); Greenland v. Pryor, 360 S.W.2d 423 (Tex.Civ.App.—San Antonio 1962, no writ); Chagra and Wolfram, Liens and Equity Rules in a Creditor's Application for a Receiver in Texas, 40 Tex. Law Rev. 649 (1962). Therefore, Alamo Lumber Company would not be entitled to a receivership to protect its claim on an unsecured open account, and we must look to the claim of the Bank to determine the necessity for a receivership.

Bank brought suit on two secured notes. Note No. 1 was executed by Archer Parr on February 5, 1971, in the principal sum of $150,000 and was payable "ON DEMAND, or if no demand is made, then semi-annually after date . . . beginning 8–8–71 . . . ." Semi-annual payments of $15,000, plus interest, were regularly made; and at the time the suit was filed, the principal sum owed had been reduced to $90,000. Note No. 2 was executed by Archer Parr on February 22, 1972, in the principal sum of $35,000 and was payable "ON DEMAND, or if no demand is made, then 182 days after date . . . ." Nothing was paid on the principal of this note, but interest was paid and the note renewed and extended each six months, the last renewal being to September 15, 1973. Both notes were secured by financing statements and security agreements on several hundred head of livestock and items of farm equipment located in Duval County. Bank filed this petition wherein it declared said notes due and owing and sought judgment on final hearing for the principal of said notes together with reasonable attorney's fees, as well as for foreclosure of said lien.

It is obvious from Bank's petition and the testimony introduced at the hearing on the application for temporary orders that the basis for Bank's action is the contested litigation in connection with the dissolution of the marriage. In fact, Bank's president testified that the notes were not delinquent and Archer Parr's financial condition was satisfactory, but he decided to file this suit after Archer Parr advised him that it looked like the court would impound the proceeds from a scheduled auction on August 18, 1973, of about 175 head of registered cattle. This public auction had been advertised for some time, and Bank had not previously objected to such sale of these cattle, although same were part of

the Bank's security for said loans. Thus, it was not the proposed auction that motivated the suit, but rather the threatened impounding of the proceeds thereof which might conceivably prevent payment of the installment due on August 8. As additional evidence of insecurity, Bank alleged and showed that Jody Martin Parr was seeking $20,000 per month in temporary support, which would seriously deplete the couple's estate if the divorce suit was pending for any length of time.[3] It was also alleged and shown that the couple owed $92,000 on their 1972 income tax and had other extensive debts, including the notes owed intervenors. It was further established that appellant had made sworn allegations in her divorce petition which could result in a claim for a tax deficiency, as well as a potential claim by Duval County for recovery of a substantial sum of money.

■ By supplemental brief, appellees correctly point out that a court hearing a divorce action has the equitable power to grant a receivership, where necessary, over the marital estate. See: Hailey v. Hailey, 160 Tex. 372, 331 S.W.2d 299 (1960); Cox v. Cox, 107 S.W.2d 1031 (Tex.Civ.App.—El Paso 1937, no writ); 49 Tex.Jur.2d Receivers § 33. Such rule has no application here in that Bank filed an independent suit which was clearly, deliberately and repeatedly kept apart from the divorce proceedings by objections from appellees' attorneys and by rulings of the trial court. Therefore, the necessity for a receivership cannot be weighed under the rules applicable to a receivership ancillary to a divorce action. Nevertheless, it is recognized that Bank's evidence as to the necessity for a receivership relates almost exclusively to the controversy surrounding the dissolution of the marriage. Assuming that Bank feared that action by the court in either of the two divorce actions would jeopardize Bank's security interest, an adequate remedy was available to it through intervention in the divorce case. Broadway Drug Store of Galveston v. Trowbridge, 435 S.W.2d 268 (Tex.Civ.App.—Houston [14th Dist.] 1968, no writ).

When we consider this record as an independent suit, it does not support the trial court's implied finding that Bank's security was in danger of being lost, removed or materially injured so as to justify a receivership. To the contrary, Bank feared that such funds would be impounded by the court. The bulk of such security consists of about 792 head of cattle which were under the control and management of Archer Parr. The Bank not only had full confidence in his management, but he would certainly be better qualified to preserve and manage these cattle than the appointed receiver, a practicing attorney in a distant city. It necessarily follows that a better price could be realized by the owner through private sale than through distress sale such as by a receiver. In any event, there is no evidence that such security was in any danger of being lost, removed or materially injured while Bank's suit on the notes was pending.

■ It must be kept in mind that a receiver should not be appointed unless clear showing is made of necessity for such appointment and where there is no other adequate remedy. See 6A, Texas Practice, Lowe, Remedies, § 1422, Availability (1973). In Texas Consolidated Oils v. Hartwell, 240 S.W.2d 324, 327 (Tex. Civ.App.—Dallas 1951, mand. overr.), the court described the harsh effects of receivership as follows: "No more radical remedy could be devised which would discredit, cripple and, in the majority of instances, put to an end any business or enterprise; and such remedy should never be applied unless some serious injury to the complainant will result, or is threatened." We, therefore, conclude that the trial court erred in granting a receivership in this in-

---

3. The evidence showed that temporary support of $2,000 per month had been set in the Duval County divorce suit.

dependent action brought by a secured creditor.

 Such holding is without prejudice to a subsequent finding by the court that a receivership is necessary ancillary to the suit for dissolution of the marriage. However, it must be recognized that the receiver here was given powers beyond those prayed for by appellees, and certainly beyond those permitted in an ancillary proceeding.[4] The receiver here was directed to take full and exclusive control over all separate and community property of either party, irrespective of whether same was pledged as security for the notes sued on herein; the receiver was given the power to determine the validity of all debts and claims against the couple, including reasonable attorney's fees and the necessity for same; and the receiver was directed to pay off such claims and debts as he saw fit, without regard to the exemption rights of either party, or to whether the property being sold or debt to be paid was separate or community. Thus, the order, although ostensibly an interlocutory order,[5] not only had the effect of a final judgment, but actually granted the receiver more power than the court could have exercised after a trial on the merits. Furthermore, it was granted without requiring a bond of appellees as required by Rule 695, T.R.C.P. Such an order cannot be upheld. Pelton v. First National Bank of Angleton, 400 S. W.2d 398 (Tex.Civ.App.—Houston 1966, no writ).

The order of the trial court of August 15, 1973, as amended on August 28, 1973, appointing the receiver is hereby reversed and the cause remanded to the trial court with directions that the receivership be promptly closed after approval of the account of said receiver.

---

4. The order of August 28, 1973, provides in part: ". . . as to the separate and community estates of the Defendants Archer Parr and Jody Martin Parr, that the Receiver be and is hereby empowered to discover, gather, marshall, audit, control, manage, borrow upon, take possession of, sell and otherwise dispose of the separate and community estates of the Defendants Archer Parr and Jody Martin Parr until all of the debts, claims and obligations due and owing by the said Defendants Archer Parr and Jody Martin Parr have been completely liquidated, paid and cancelled. . . ."

5. Archer Parr, although personally present and represented by an attorney, had not even filed an answer at the time of such hearing.