# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00556-CV

**John Doe and Jane Doe, as parents and next friends of Jane Doe II, Appellants**

**v.**

**Katherine Lee Carroll and Billy Dan Carroll, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
### NO. D-1-FM-08-002832, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

John Doe and Jane Doe, as parents and next friends of Jane Doe II, a child allegedly assaulted by Billy Dan Carroll, appeal the trial court's order striking their petition in intervention in a pending divorce proceeding between appellees Billy Dan Carroll and Katherine Carroll. The Does also challenge the subsequent divorce decree that was agreed and approved by the Carrolls and entered by the trial court. Because we conclude that the trial court did not abuse its discretion in striking the petition in intervention, we affirm the trial court's order and the divorce decree.

## BACKGROUND

The Carrolls were married in June 1987 and are the parents of two children from their marriage. The Carrolls ceased living together in May 2008, and Katherine Carroll filed for divorce on June 2, 2008. At the time she filed for divorce, Billy Dan Carroll was incarcerated and charged with multiple counts of aggravated sexual assault of a child.

The Does, on behalf of their daughter who was one of Mr. Carroll's alleged victims, filed their petition in intervention on July 7, 2008. The Does sought damages for Mr. Carroll's alleged sexual assault and civil assault of their daughter, a court determination of the separate and community assets of the Carrolls, and an "equitable division of community assets with respect to Intervenors' rights as creditors of [Mr.] Carroll." They contended that they had a justiciable interest in the divorce as creditors of Mr. Carroll and intervened to "prevent an inequitable division of assets in the divorce."

The Carrolls moved to strike the intervention on several grounds. They urged that the Does were not creditors and had no security or lien interest, the evidence and elements for sexual and civil assault were not applicable or relevant to the divorce proceeding, the Does could not meet their burden to show that the intervention would not complicate the case by an "excessive multiplication" of issues, and that the intervention would delay the divorce causing "serious harm" to Ms. Carroll and "potentially to the children of the marriage." The Carrolls represented that they expected to be able to reach an agreement on the division of property, child custody, and all other issues in the divorce so that they would be able to resolve their divorce at an uncontested hearing, and that they sought a "quick resolution of this divorce proceeding in order to allow [Ms. Carroll] to continue to care for their children."

The Does responded to the motion to strike. They contended that any delay from the intervention would be minimal and that they would "allow the divorce to proceed through completion within 90-120 days of filing." They urged that the intervention was necessary "to prevent Mr. Carroll's perpetuation of a fraud" and to "insure a proper identification of the property

2

incident to the divorce" and an equitable division recognizing the rights of Mr. Carroll's victims. The Does "recognized that the sexual assault claim should be separated or severed from the divorce proceeding at a final divorce trial, or hearing to prove up a divorce agreed to by all parties." The Does stated that they "do not seek to keep the Carrolls from entering a final divorce decree before the completion of the civil/assault case," but "sufficient time to insure that the Carrolls prepare sworn inventories and appraisements and be subject to discovery and possibly deposition with regard to the identification and division of separate property and community assets."

The trial court conducted a hearing on July 30, 2008, regarding the Carrolls' motion to strike the Does' petition in intervention. At the hearing, counsel for the Does represented that the Does did not "intend to try and keep the Carrolls from proceeding to a swift divorce" and "what we're asking for simply is to insure that appropriate schedules are prepared by these two parties and that we have a limited ability to discover with regard to their assets in the marital estate." Counsel for the Does and the trial court had the following exchanges:

> The Court: Okay. So then if I understand correctly, all you really want to accomplish by this intervention is participation in the discovery process, and then you would agree to sever out?
>
> Counsel: That's what our response says.
>
> * * *
>
> The Court: So it would be a fair statement to say that what you really want to accomplish by virtue of this intervention is discovery?
>
> Counsel: Discovery and identification to insure that they're—that at least it's out in the open so that we don't have potential fraud on victims or a fraud occurring here by Mr. Carroll.

3

> The Court:    Well, out in the open is discovery in my mind.
>
> Counsel:    That's what I'd like.
>
>                                     * * *
>
> The Court:    . . . So once you get your discovery, you're happily out of the case and—right? Yes?
>
> Counsel:    Severed and separated.

The Does sought responses to interrogatories and requests for production, possibly depositions, and a "sworn inventory" to "insure full disclosure" of the assets.

The parties did not offer testimony at the hearing, but the Does agreed to stipulate to certain facts as represented by Ms. Carroll's counsel. Her counsel represented:

- Ms. Carroll was undergoing chemotherapy treatment for ovarian cancer and that her doctor was concerned about the "stress of this divorce" and that "she needs to get this divorce behind her just as soon as possible for her own health";

- Ms. Carroll was the sole parent with income to take care of her two girls;

- Ms. Carroll's monthly income was approximately $2,800;

- the monthly mortgage payment on the Carrolls' house was $2,700; and

- in order to deal with family financial obligations, Ms. Carroll needed to finalize the divorce as soon as possible and any delay would cause a "great deal of hardship."

Ms. Carroll's counsel also informed the trial court that the 60-day statutory waiting period ended at the beginning of August and that the Carrolls expected to proceed to an uncontested divorce hearing shortly after the expiration of the waiting period. *See* Tex. Fam. Code Ann. § 6.702(a) (West 2006)

4

(trial court "may not grant a divorce before the 60th day after the date the suit was filed"). The trial court entered an order dated August 7, 2008, striking the intervention.

The final divorce hearing, held on August 8, 2008, was uncontested. Ms. Carroll testified at the hearing to her agreement with Mr. Carroll to the terms of the divorce decree, her income as a court reporter, the community assets including their house, the community debts that included a mortgage on their house and approximately $84,000 in credit card debts, her older daughter's college tuition of $38,000, and her diagnosis and treatment of ovarian cancer. She testified "yes" when asked if the marriage was no longer supportable in part because of the criminal charges against Mr. Carroll, and "correct" when asked if the assets listed in the divorce decree "include substantially all of the assets of you and Mr. Carroll." The trial court granted the divorce and entered the agreed divorce decree as approved by the Carrolls.

The divorce decree contained findings that included:

1. That Respondent is currently incarcerated in the Travis County Jail, and has been indicted on multiple counts of sexual abuse.

2. That Respondent is not currently contributing to the maintenance or care of the children of the marriage.

3. That the children of the marriage are aged 20 and 17, and that the 20 year old child is currently enrolled in college and the 17 year old is a senior in high school and planning to attend college.

4. That it is probable that Respondent will be unable to contribute to the care and maintenance of the children prior to their graduation from college.

5. That the burden of support and maintenance for the children of the marriage in all likelihood [will] be borne completely by Petitioner.

5

6. That prior to the date of this decree, the parties have incurred significant community debts, including a mortgage.[1]

7. That the burden of satisfying these existing liabilities will in all probability be borne completely by Petitioner.

8. That Petitioner has been diagnosed with ovarian cancer and is currently undergoing chemotherapy treatment, and this cancer can adversely impact her ability to work and to provide financial support for the children.

9. That given the foregoing facts, as well as the other evidence admitted, the Court finds that the division of assets set forth in this decree is fair and equitable, and further is in the best interests of the children of the marriage.

[1] The community debts referred to are not intended to include, and do not include, any liabilities that might have been incurred by Respondent because of any alleged sexual assaults or other tortious conduct that he may have committed.

Pursuant to the divorce decree, Ms. Carroll was appointed the sole managing conservator of their minor child, Mr. Carroll was awarded as his sole property a 2006 Toyota and the personal effects in his possession, Mr. Carroll agreed to pay community debts and to hold Ms. Carroll harmless from those debts, and Ms. Carroll was awarded substantially all of their assets, including their house, their stocks and cash, vehicles other than the 2006 Toyota, and their businesses.

The Does filed a motion for reconsideration and for a new trial to "require the Carrolls to produce a sworn inventory and appraisement and enter into a divorce decree that is done in subordination to the rights of Billy Carroll's victims." The Does complained that, because the divorce decree transferred all the Carrolls' assets to Ms. Carroll, Mr. Carroll was able to claim that he was indigent in the criminal proceedings against him and to obtain a "judicial stamp" by way of a footnote in the divorce decree that the community debts of the marriage do not include the

"debts/damages owed by Billy Carroll to his victims." The trial court did not rule on the Does' motion. This appeal followed.

## ANALYSIS

In two issues, the Does contend that the trial court abused its discretion in striking their petition in intervention and, because the trial court entered the agreed divorce decree after striking the intervention and the decree directly affected the Does' interests, the decree should be reversed and the matter remanded for a new trial.

### Petition in Intervention

In their first issue, the Does contend that the trial court abused its discretion because they satisfied the applicable factors to intervene and that the Carrolls should be equitably estopped from seeking to strike the petition in intervention. The Does argue that the interjection of the sexual assault claims into the divorce did not excessively multiply the issues. They urge they "made it quite clear" to the trial court that they expected the trial court to sever or separate the sexual assault allegations and that they only sought to conduct discovery to identify the character of the Carrolls' assets and to have the trial court enter an equitable division of the community assets.

This Court reviews a trial court's decision on a motion to strike a petition in intervention under an abuse of discretion standard. *See In re Lumbermens Mut. Cas. Co.*, 184 S.W.3d 718, 722 (Tex. 2006); *Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex. 1990) (trial court has "broad discretion" in deciding motion to strike intervention). The test for an abuse of discretion is whether the trial court acted without reference

7

to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). In reviewing matters committed to a trial court's discretion, we are not to substitute our own judgment for that of the trial court but to determine whether the trial court acted in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *See Walker v. Gutierrez*, 111 S.W.3d 56, 63 (Tex. 2003).

"Any party may intervene by filing a pleading, subject to being stricken out by the court for sufficient cause on the motion of any party." Tex. R. Civ. P. 60. When an intervention is challenged by a party's motion to strike, the intervenor bears the burden to demonstrate a "justiciable interest" in the pending suit. *In re Union Carbine Corp.*, 273 S.W.3d 152, 155 (Tex. 2008); *Mendez v. Brewer*, 626 S.W.2d 498, 499 (Tex. 1982); *Zeifman v. Michels*, 229 S.W.3d 460, 464 (Tex. App.—Austin 2007, pet. denied). The Texas Supreme Court explained the "justiciable interest" requirement:

> Because intervention is allowed as a matter of right, the "justiciable interest" requirement is of paramount importance: it defines the category of non-parties who may, without consultation with or permission from the original parties or the court, interject their interests into a pending suit to which the intervenors have not been invited. Thus, the "justiciable interest" requirement protects pending cases from having interlopers disrupt the proceedings. . . . *To constitute a justiciable interest, "[t]he intervenor's interest must be such that if the original action had never been commenced, and he had first brought it as the sole plaintiff, he would have been entitled to recover in his own name to the extent at least of a part of the relief sought"* in the original suit. . . . In other words, a party may intervene if the intervenor could have "brought the [pending] action, or any part thereof, in his own name."

*In re Union Carbide Corp.*, 273 S.W.3d at 154-55 (internal citations omitted) (emphasis added).

Even when the intervenor has a justiciable interest in a pending suit, the ultimate determination of whether to strike an intervention remains within the trial court's sound discretion. *See Mendez,* 626 S.W.2d at 499; *Zeifman*, 229 S.W.3d at 464 (right to intervene "ultimately rooted in equity"); *Atchley v. Spurgeon*, 964 S.W.2d 169, 171 (Tex. App.—San Antonio 1998, no pet.) (court may consider equities in deciding motion to strike intervention). Factors that a court may consider when faced with a motion to strike include whether the intervention will complicate the case by the "excessive multiplication of the issues" and whether the intervention is "almost essential to effectively protect the intervenor's interest." *Guaranty Fed.*, 793 S.W.2d at 657; *see Law Offices of Windle Turley, P.C. v. Ghiasinejad*, 109 S.W.3d 68, 72 (Tex. App.—Fort Worth 2003, no pet.) (court may consider "other avenues available" to protect intervenor's interest when determining whether intervention "almost essential"). Applying these principles of law, we review the trial court's decision to strike the Does' petition in intervention.

The Does contend that the Carrolls did not challenge the Does' justiciable interest in the divorce proceeding, but the Carrolls in their motion to strike expressly disputed the Does' alleged basis for contending a justiciable interest. The Carrolls asserted that the Does were "not creditors, and have no security interest or lien interest. Rather, they allege that they have an unadjudicated and unliquidated claim." We conclude that the issue of the Does' "justiciable interest" was before the trial court for consideration in its determination whether to strike the intervention. *See In re Union Carbide Corp.*, 273 S.W.3d at 155 (when intervention challenged by motion to strike, intervenor bears burden to show justiciable interest).

9

Based on the Does' position that they only intervened to conduct discovery of the marital assets and to insure an equitable division of the community assets, the trial court could have concluded that the Does did not have a justiciable interest in the pending divorce. The trial court could have concluded that the Does failed to show that, as tort claimants against Mr. Carroll without a judgment or security interest, they could have obtained the type of discovery that they sought in the divorce action. *See id.* at 154-55; *Zeifman*, 229 S.W.3d at 464 (justiciable interest "must be present and not merely remote or contingent"). The Does have provided no authority, and we have found none, to support a third party asserting pre-judgment tort claims against one of the spouses being granted the right to intervene in a divorce proceeding to conduct discovery of the "character of the assets" of the marital estate.[1] The Does cite a Travis County local rule regarding disclosing assets by the parties to each other or the court, but the local rule does not mandate litigants to identify the "character of their assets" in every case. *See* Travis County Standing Order Regarding Children, Property, and Conduct of the Parties, Rule 3.2.[2] Similarly, as to the Does' request for an "equitable division of community assets with respect to Intervenors' rights as creditors of [Mr.] Carroll," the Does have provided no authority, and we have found none, to support a pre-judgment, unsecured tort claimant's right to defeat the trial court's division of the marital property. *See* Tex. Fam. Code

---

[1] To the extent that the Does are entitled to pre-judgment discovery of net worth based on their claim for punitive damages against Mr. Carroll or in aid of judgment, they may be entitled to this type of discovery in a suit against Mr. Carroll. *See* Tex. R. Civ. P. 621a (post-judgment discovery to enforce judgment); *Lunsford v. Morris*, 746 S.W.2d 471, 472-73 (Tex. 1988) (discovery allowed pre-judgment as to net worth when seeking punitive damages).

[2] Rule 3.2 of the Travis County Standing Order Regarding Children, Property, and Conduct of the Parties states that, in a divorce case, "both parties to the marriage are ORDERED to refrain from . . . [m]isrepresenting or refusing to disclose to the other party or to the Court, on proper request, the existence, amount, or location of any property of one or both of the parties."

Ann. § 7.002 (West 2006) (court shall order division of property "in a manner that the court deems just and right, having due regard for the rights of each party and any children in the marriage").[3] On this record, we cannot conclude that the trial court abused its discretion in striking the Does' intervention because the trial court could have concluded that the Does did not have a justiciable interest to seek discovery and an "equitable division" of the Carrolls' assets. *See In re Union Carbide Corp.*, 273 S.W.3d at 154-55.

We also conclude that the trial court, alternatively, could have concluded that an intervention by unrelated third parties asserting sexual assault and civil assault claims against Mr. Carroll for damages would have complicated the divorce by an "excessive multiplication of the issues." *See Guaranty Fed.*, 793 S.W.2d at 657. There are different elements and evidence required to prove the Does' claims for sexual assault and civil assault against Mr. Carroll compared with the elements and evidence involved in the Carrolls' divorce.

---

[3] Counsel for the Does agreed with the trial court at the hearing on the motion to strike that creditors of the Carrolls would not be able to defeat the Carrolls' division of property. The trial court and the Does' counsel had the following exchange:

| Court: | . . . . I mean, with regard to the community property, that's going to be a decision by the Court within its discretion in determining a just and right division. |
|---|---|
| Counsel: | Sure. |
| Court: | And I don't know that your creditors are going to be able to defeat that. |
| Counsel: | No. I agree with you. |

11

The trial court further could have concluded that the intervention was not "almost essential" for the protection of the Does' interest because there were other avenues available to the Does to protect their interest. *See id.*; *Law Offices of Windle Turley*, 109 S.W.3d at 72. Assuming that the Does pursue a separate suit against Mr. Carroll and ultimately obtain a judgment for damages against Mr. Carroll for his conduct during the Carrolls' marriage, the Does' rights to enforce their judgment are not affected by the Carrolls' property division in the divorce decree. *See* Tex. Fam. Code Ann. § 3.202(d) ("All community property is subject to tortious liability of either spouse incurred during marriage."), § 3.003(a) (West 2006) ("Property possessed by either spouse during or on dissolution of marriage is presumed to be community property."); *Stewart Title Co. v. Huddleston*, 608 S.W.2d 611, 612 (Tex. 1980) (community property acquired by wife as part of divorce subject to judgment liens properly secured against her as a result of pre-existing community debt); *Shelton v. Shelton*, No. 01-02-01009-CV, 2003 Tex. App. LEXIS 9466, at *7-8 (Tex. App.—Houston [1st Dist.] Nov. 6, 2003, no pet.) (mem. op.) (as to joint obligations, "decree merely divides the responsibility for repayment of the [community debt] *as between the parties* and affects only their rights to seek contribution from each other in satisfaction of their joint obligation") (emphasis in original); *Blake v. Amoco Fed. Credit Union*, 900 S.W.2d 108, 111 (Tex. App.—Houston [14th Dist.] 1995, no writ) ("It is well-settled law in Texas that divorce courts cannot disturb the rights of a creditor to collect from either of the divorcing parties on a joint obligation.").[4]

---

[4] *See also* Tex. Bus. & Com. Code Ann. §§ 24.006-.008 (West 2002) ("present creditors" provided remedies for fraudulent transfers); *In re Holloway*, 955 F.2d 1008, 1015 (5th Cir. 1992) (court concluded ex-wife "insider" at time of transfer of security interest and set aside as fraudulent

12

The Does rely on *Parr v. First State Bank of San Diego*, 507 S.W.2d 579 (Tex. Civ. App.—San Antonio 1974, no writ), to contend that they are "at risk if they seek to assert their rights in any other forum other than the Carrolls' divorce." But, in *Parr*, the court addressed a secured creditor's right to intervene in a divorce proceeding to protect its security interest in specific property that was alleged to be in jeopardy. *Id*. at 580, 583. In contrast, the Does' claims are contingent on obtaining a judgment against Mr. Carroll. *See Mendez*, 626 S.W.2d at 499-50 (trial court's striking of foster parent's intervention in termination proceeding affirmed where foster parent's interest "wholly contingent upon a judgment of termination"); *Zeifman*, 229 S.W.3d at 464 (justiciable interest "must be present and not merely remote or contingent").

The Does also argue that the trial court abused its discretion because equity mandated "intervention to keep the Carrolls from perpetuating a sham to render Mr. Carroll indigent to shield himself and his assets from his victims." They rely on this Court's opinion in *Zeifman* to contend that the Carrolls are equitably estopped from seeking to strike the intervention because the Carrolls created the need for the intervention. *See Zeifman*, 229 S.W.3d at 468 n.11. In *Zeifman*, an ex-spouse filed a separate but related lawsuit from an ongoing proceeding to enjoin a school district from enrolling her child in school without naming her ex-spouse as a party. This Court concluded that the trial court abused its discretion by striking the ex-spouse's petition in intervention. *See id*. at 464-65. The equitable considerations at issue in *Zeifman* are not analogous here.

conveyance); *Brister v. Bank of America*, No. 03-00-00610-CV, 2001 Tex. App. LEXIS 5362, at *5-6 (Tex. App.—Austin Aug. 9, 2001, no pet.) (mem. op.) ("It has long been the law that a declaration in a divorce decree that a note should be paid by one party 'does not lift the responsibility off [the other party] for its payment.'. . . 'The court in a divorce action has no power to disturb the rights which creditors lawfully have against the parties.'") (internal citations omitted).

*See* id. at 461, 466. Unlike the ex-spouse whose rights and child's rights were "potentially prejudiced" by the suit in *Zeifman*, Ms. Carroll's divorce action affects the Carrolls' rights as *between* themselves concerning the dissolution of their marriage, the division of their property, and the care of their children. *See id*. at 467. Further, here the trial court could have concluded that equity favored striking the intervention. *See Atchley*, 964 S.W.2d at 171 (court may consider equities in deciding motion to strike intervention). Mr. Carroll's criminal proceeding was not before the trial court, and the Does did not dispute that delaying the divorce, even for a short time, would cause hardship to Ms. Carroll and her financial ability to care for her children.[5]

We also find the Does' reliance on *Broadway Drug Store, Inc. v. Trowbridge*, 435 S.W.2d 268 (Tex. Civ. App.—Houston [14th Dist.] 1968, no writ), and *Metromedia Long Distance, Inc. v. Hughes*, 810 S.W.2d 494 (Tex. App.—San Antonio 1991, writ denied), inapposite.

---

[5] At the hearing on the motion to strike, Ms. Carroll's counsel told the court that he would be "glad to put Kathy Carroll on the witness stand to testify about her chemotherapy treatment, the hardship that a delay would cause her and the status of the children in school and that sort of thing," but the Does' counsel stated that he was "happy to stipulate to what he said." Ms. Carroll's counsel also represented to the court:

> In order to be able to deal with those financial issues, they need to be able to get past this divorce and have decisions made about what are going to happen to certain assets, whether it's the house or retirement accounts, whether it's insurance policies that may have some residual value that they can rely upon. But they—Mrs. Carroll, in order to be able to support her child and be able to send her daughter back to college here in about 30 days, in order to be able to take care of all the family obligations that she has now on her own of raising these two girls and providing for their support, she can't wait three months or six months, however long it's going to take to litigate these other issues. It will cause an undue delay in the divorce proceeding and create a great deal of hardship.

14

In *Broadway Drug*, a creditor intervened in a divorce proceeding asserting a claim against both spouses based on a sworn account. 453 S.W.2d at 269. Whether or not the trial court should have granted a motion to strike the intervention was not at issue because neither spouse responded to the petition or sought to have the trial court strike the intervention. *Id.* The issue was whether the judgment on the intervention was in error because it was only against the husband. Our sister court concluded that it was error because the debt was a "community debt and community obligation." *Id.* The Carrolls' agreed divorce decree is consistent with the principle of law expressed in *Broadway Drug* that a divorce court in dividing community property does not have the power to prejudice a creditor's lawful rights against the divorcing parties. *See id.* at 269-70. The divorce decree does not purport to limit pre-existing creditor's rights but divides community assets and liabilities as between the Carrolls.[6]

In *Metromedia Long Distance,* the issue was an indemnitor's right to intervene in a pending suit in order to defend its indemnitees and itself from potential liability. The San Antonio Court of Appeals found that the trial court abused its discretion in striking the indemnitor's petition in intervention. 810 S.W.2d at 495. The indemnitor alleged in its petition in intervention "collusion" and a "secret agreement" between the plaintiffs and defendants for the parties to proceed

---

[6] For example, the divorce decree provides the right to indemnification between the Carrolls concerning community liability not expressly assumed by either party:

> IT IS FURTHER ORDERED AND DECREED, as a part of the division of the estate of the parties, that any community liability not expressly assumed by a party under this decree is to be paid by the party incurring the liability, and the party incurring the liability shall indemnify and hold the other party and his or her property harmless from any failure to so discharge the liability.

15

with a non-jury trial and for the plaintiffs to obtain a "friendly judgment" and then to seek recovery from the indemnitor and not from the defendants. *Id*. at 496. The indemnitor also alleged in its petition that it could raise defenses that the defendants no longer chose to raise. *Id*. The Does do not face similar potential liability from the divorce decree.

On this record, we conclude that the trial court did not abuse its discretion in striking the Does' petition in intervention. *See Guaranty Fed.*, 793 S.W.2d at 657.

### *Divorce Decree*

As part of their first issue, the Does contend that the Carrolls should be prevented from perpetuating a sham by allowing Mr. Carroll to be deemed indigent in the criminal proceeding against him and by improperly obtaining a judicial finding in a footnote that all assets transferred to Ms. Carroll were "off limits" to Mr. Carroll's victims. The challenged footnote in the divorce decree states: "The community debts referred to are not intended to include, and do not include, any liabilities that might have been incurred by Respondent because of any alleged sexual assaults or other tortious conduct that he may have committed."

In their second issue, the Does make a similar argument in contending that the divorce decree should be reversed and remanded for a new trial. They argue the decree should be void as against public policy and that it was a "clear effort to perpetuate a sham on the legal system, on Mr. Carroll's victims, and upon Travis County, all of which violates public policy, the inherent powers of the Court and civil and criminal justice system." They also contend in their second issue that the agreed divorce decree should be reversed because the decree directly affected their interests and it was entered after the trial court granted the Carrolls' motion to strike the Does from the case.

16

Having concluded that the trial court did not abuse its discretion in striking their intervention, the Does do not have a justiciable interest in the subsequently entered divorce decree, and we have no jurisdiction to consider these additional issues. *See Henderson Edwards Wilson, L.L.P. v. Toledo*, 244 S.W.3d 851, 855 (Tex. App.—Dallas 2008, no pet.) (because court concluded that trial court did not err in striking intervention, party did not have a justiciable interest in remaining issues raised on appeal); *Kenseth v. Dallas County*, 126 S.W.3d 584, 594 (Tex. App.—Dallas 2004, pet. denied) (party may only appeal orders in which he has a justiciable interest); *see also Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex.1993) (standing is component of court's subject matter jurisdiction).

## CONCLUSION

Because we conclude that the trial court did not abuse its discretion in striking the Does' intervention, we affirm trial court's order and the divorce decree.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed:   June 23, 2009

17